(72 App. Div. 248.)

DENTON et al. v. STATE. SYPHERT et al. v. SAME. WOODHULL LUM-
　　BER CO. v. SAME. FORESTPORT LUMBER CO. v.
　　　　　　SAME. GALLAGHER v. SAME.

(Supreme Court, Appellate Division, Third Department. May 7, 1902.)

1. WATER COURSES—APPROPRIATION FOR STATE CANAL PURPOSES—INCIDENTAL
　　RIGHTS—DAMS AND RESERVOIRS.

　　　Laws 1836, c. 157, providing for the construction of a navigable canal
　　and feeder from the Black river to the Erie Canal, and requiring that
　　they should be so constructed as to pass "as large a quantity of water
　　to the Erie Canal as can reasonably be spared from the Black river,"
　　etc., gave an implied right to erect such dams, reservoirs, and other struc-
　　tures as might be necessary for the purpose of diverting the waters of
　　such river for the purposes for which they were appropriated.

2. SAME—NAVIGABLE STREAMS—SPATUTORY RIGHTS—FLOATING LOGS—APPRO-
　　PRIATION FOR STATE CANALS—STATE DAMS AND RESERVOIRS—INTERFER-
　　ENCE WITH STATUTORY RIGHTS.

　　　Laws 1853, c. 452, made part of the Black river a public highway for
　　floating logs, and prohibited dams in that part of the river without a
　　log chute in the current of the stream. Laws 1836, c. 157, made a per-
　　manent appropriation of waters from the same part of such river for
　　state canal purposes; and under authority of Laws 1883, c. 452, a dam
　　or reservoir for storage of water for such canal purposes was erected in
　　1894 within the limits prescribed by Act 1853; such dam having a
　　chute, but not in the current of the stream. Held, that in the absence of
　　express words in Act 1853 surrendering any of the state's rights as re-
　　gards such river, and in view of subsequent acts (Acts 1857, c. 245, and
　　Acts 1861, c. 344) relating to filing of damage claims by riparian owners in-
　　jured by water appropriations under Act 1836, and appropriations in 1883,
　　1889, 1891, 1892, 1893, and 1894 for the dam provided for by Act 1883,
　　asserting the state's authority over such river, derived under Act 1836,
　　the rights given the public by Act 1853 were subject to the state's rights
　　under Act 1836 to appropriate the waters of such river for the purposes
　　therein specified, including the implied right to build the dam provided
　　for by Act 1883, as necessary to such appropriation.

3. SAME—STATE DAMS—INTERFERENCE WITH LUMBER INTERESTS—CLAIM FOR
　　DAMAGES—SUFFICIENCY OF EVIDENCE.

　　　Where the state constructed a river dam, which it was duly authorized
　　to construct, and sawmill operators claimed damages alleged to have
　　been sustained by reason of such dam not having the kind of log chute
　　on it which they claimed was required by law, but the evidence failed
　　to disclose whether the damages claimed were not those necessarily inci-
　　dent to the construction of the dam, and also failed to show the extent
　　to which complainants were injured by lack of a proper chute, a judg-
　　ment dismissing the claims would not be disturbed.

Appeal from trial term.

Actions by Alonzo Denton and others against the state of New
York. From a judgment dismissing complainants' claims, they ap-
peal. Affirmed.

Argued before PARKER, P. J., and KELLOGG, SMITH,
CHASE, and FURSMAN, JJ.

George E. Pritchard, for appellants Denton & Waterbury.

Josiah Perry, for other appellants.

John C. Davies, Atty. Gen. (George H. Stevens, of counsel), for
the State.

SMITH, J. The claimants ask for damages claimed to have been
caused by reason of the state's interference with the navigability of

Black river. The claimants are mill owners, and own forest property by the stream. Their claims are based, not upon an invasion of their riparian rights, but upon an invasion of their rights to this stream as a public highway. The claimed interference is by the construction of a reservoir dam, under chapter 452 of the Laws of 1883. Formerly, at Forestport, on said river, a dam had been constructed, and by said dam the claimants' mills are located. This reservoir dam was constructed up the stream about 1½ miles, and interfered with the floating of logs to their mills, by reason of which interference this damage is claimed to have been sustained.

By chapter 157 of the Laws of 1836 the canal commissioners were required to construct a navigable canal from Black river to the Erie Canal at Rome, and also a navigable feeder from Black river to the summit level of the Erie Canal, near the village of Boonville. It was required that the feeder and canal should be so constructed as to pass "as large a quantity of water to the Erie Canal as can reasonably be spared from the Black river and from the northerly portion of the Black River Canal." Thereafter, in 1847, 1848, 1849, and 1850, divers acts were passed granting further appropriations for the construction of said canal and said feeder. By chapter 181 of the Laws of 1851 the state proposed to appropriate the water of the lakes from which the Black river flows, as also the head waters of Moose and Beaver rivers; and it appears from the evidence that they subsequently built reservoirs at the head of Black, Moose, and Beaver rivers. By chapter 452 of the Laws of 1853 the Black river from the junction with Moose river to the Moose River tract, in Herkimer county, was declared a public highway for the purpose of floating logs and lumber down the same. Within these bounds the reservoir in question is located. By that act it was further provided that on that part of said river "no dam shall hereafter be erected without an apron or shute at least twenty feet in width in the current of the river, of a proper slope for the passage of logs and lumber." In that act was appropriated the sum of $5,000 for the purpose of improving Black river within said territory. It was directed that such money should be expended in clearing out rocks, stones, and other obstructions, and for the construction of piers, booms, and dams, as might be necessary for the safe passage of logs and lumber down the said river. By chapter 245 of the Laws of 1857 it was provided that within one year of the passage of the act it should be lawful for the owners and lessees of land and water rights upon the Black river to present their claims for damages on account of the taking of waters of said river for the use of the Black river and Erie Canal feeder, the same as if they had been presented within the time prescribed by law. By chapter 344 of the Laws of 1861 further indulgence was given to those who might claim that their land had been injured, and a further opportunity to present their claims for audit. By chapter 452 of the Laws of 1883 the commissioners of public works were directed to construct the reservoir in question in Black river above Forestport pond, for the purpose of storing water for canal purposes. Thereafter, in 1889, 1891, 1892, 1893, and 1894, further appropriations were made for

the purpose of finishing the said reservoir, and for cleaning the flow ground covered by the reservoir. In 1894 this reservoir dam was completed. A chute 20 feet in width was placed therein, but not in the current of the stream. The claimants contend that by the erection of this reservoir dam the navigability of the stream has been illegally impeded.

Before discussing the effect of these several statutes, and the rights of the claimants thereunder, it may be well to have in mind one or two principles of construction, in the light of which these statutes must be read. In Black on Interpretation of Laws, at page 62, a rule of construction is thus stated:

"Every statute is understood to contain by implication, if not by its express terms, all such provisions as may be necessary to effectuate its object or purpose, or to make effective the rights, powers, privileges, or jurisdiction which it grants and also all such collateral and subsidiary consequences as may be fairly and logically inferred from its terms."

In the same authority, at page 119, another rule is thus stated:

"General words in a statute do not include nor bind the government by whose authority the statute was enacted, where its sovereignty rights, prerogatives, or interests are involved. It is bound only by being expressly named, or by necessary implication from the terms and purposes of the act."

The writer further says:

"This is a very ancient rule of the English law, and is equally applicable to the national and state governments in this country. It is said that laws are supposed to be made for the citizen or subject, and not for the sovereign power. Hence, if the government is not expressly referred to in a given statute, it is presumed that it was not intended to be affected thereby. And this presumption, in any case where the rights or interests of the state would be involved, can be overcome only by clear and irresistible implication from the statute itself. Generally speaking, therefore, the state is not bound by the provisions of any statute, however generally it may be expressed, by which its sovereignty would be derogated from, or any of its prerogatives, rights, titles, or interests would be devested, save where the act is specifically made to extend to the state, or where the legislative enactment in that regard is too plain to be misunderstood."

Within these rules of interpretation, it would seem that the appropriation of 1836 of so much of the waters of Black river as might be spared gave the implied right to erect such structures as might be necessary for the purpose of diverting the water so appropriated to the purposes for which they were appropriated. Such a right is indispensable to the enjoyment of the rights therein expressly granted. Under the act of 1836 the state dam was erected at Forestport for this purpose. Later it became necessary, for the further utilization of this right acquired by the state, to erect another dam, which is called the "Reservoir," between one and two miles above the old state dam. The right to erect this reservoir seems, therefore, to be clearly within the implied power given in the act of 1836, as necessarily incidental to the power to take from the Black river so much of the waters as could be spared, for the use of the Black River Canal and the Erie Canal feeder. That this was intended as a permanent appropriation was held in People v. Scoonmaker, 13 N. Y. 247. But claimants base their rights upon the act of 1853, which makes this river a navigable stream. That it was not intended by this act to surrender

any of the rights of the state is clearly indicated by the subsequent legislation heretofore recited. Two years after this act was passed the decision in the case of People v. Scoonmaker, supra, was made, declaring that appropriation to have been a permanent one. Within the rule of interpretation heretofore cited, the state is not presumed, without express words, to have surrendered any of its rights or interests. Any rights given to the public by the act of 1853 must therefore be presumed to have been subordinate to the rights of the state acquired by the act of 1836, and such rights as are reasonably incidental to the powers thereby given, including the power to erect such structures therein as were necessary to make effective such grant.

The appellants further contend upon this appeal that, even if the right be found to build a reservoir, that right should have been so exercised as not unnecessarily to impair the right of the highway given by the act of 1853; that that act required all dams to be constructed with a chute in the current of the stream to facilitate the passage of logs; that the reservoir dam constructed not only had no chute in the current of the stream, but that the chute constructed at one end thereof was unnecessarily inadequate for the passage of logs. I am satisfied that the state is not in any way bound by the provisions of the act of 1853. The state is not expressly named in the act, and, within the rule of interpretation above cited, the limitation is one for the citizen or subject, and not for the sovereign. If we assume, however, that the state was bound to build the reservoir so as not unnecessarily to impede navigation, it can hardly be contended that for a breach of that obligation a case has been made against the state. There is some evidence to the effect that this chute is better located where in fact it was located than it would be in the current of the stream. There is also evidence from which the court could have found that, with small expense, booms could be so constructed as to guide the logs to the chute as located. From the evidence it appears that after the construction of the reservoir the water was backed up for a number of miles, forming a pond, in which there was substantially no current in any place. All facts necessary to sustain this judgment are presumed to have been found by the court below. But what would seem to be a decisive answer to claimants' contention is the fact that the record is barren of any evidence from which the claimants' damage could be estimated upon any such theory of the case. The measure of damage to which the claimants' witnesses testify was the difference in expense in getting the logs to the mill before the building of the reservoir and after. In just what respects the witnesses deem the task the more difficult with the reservoir, is not fully disclosed. The backing up of the water forming the pond, and the extended flow ground necessarily resulting, in which were located the stumps of trees and other obstructions, rendering more difficult the propelling of the timber, seem to have entered into this estimate. If, then, the reservoir were lawfully constructed, and the only fault of the state, for which liability can attach, be in the location and construction of this chute, there is no evidence in the case as to the extent to which such fault has impeded navigation, or from which the court could estimate the damage which these parties have suffered

therefrom. We find no reason, therefore, to disturb the judgment directed by the court of claims.

Judgment unanimously affirmed, with costs. All concur; Fursman, J., in result.