## UNITED STATES v. WEISENBLOOM.
### No. 284, Docket 21016.

Circuit Court of Appeals, Second Circuit.

June 7, 1948.

John F. X. McGohey, U. S. Atty., of New York City (Edmond McCarthy, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for plaintiff-appellee.

Dollinger, Cooperstein & McCaffrey, of New York City, for defendant-appellant.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This appeal requires us to decide whether § 8 of the Commercial Rent Control Laws of the State of New York[1] is applicable to the United States as a lessor of surplus land it owns in the City of New York and has leased for commercial purposes.

In July 1942, the United States leased to the appellant for use as a gasoline service station some land acquired for a site for a post office. The rent reserved was $125.00 a month and a condition of the letting was that appellant should "vacate the premises within thirty days after receipt of a written notice so to do."

On July 25, 1947, appellant was duly served with a written notice to vacate the premises on the 28th day of August, 1947. He was not then in default under the lease and did not comply with the notice. The United States then brought this suit to recover possession of the premises, solely in order to re-let them more advantageously for continued commercial use. Appellant's answer does not deny the letting on terms subject to notice to quit of his receipt of due notice and failure to comply therewith but raises two issues which were both decided adversely to him below. They are (1) that the district court was without jurisdiction of the suit and (2) that the above mentioned New York statute is a bar to the action.

■ The first is without merit. Though we assume, without deciding, that the government might have sued in the municipal court in the municipal court district in which the property is located,[2] that jurisdiction is not exclusive. This is a suit of a civil nature brought by the United States and jurisdiction of it is conferred upon the federal district court by 28 U.S.C.A. § 41(1). See Cotton v. United States, 11 How. 229, 331, 13 L.Ed. 675.

As to the second point, we put aside all questions as to the right of the government to terminate the lease and reclaim the premises for postal or other like governmental purposes. The issue is whether the restrictive provisions of the New York law apply to the United States as they do to private persons who are lessors of real estate in the City of New York. This problem has two aspects: the power of the state to control the national government in its use of its own land and the intent of the New York legislature to include the national government within the coverage of the statute here relied on.

■ The power of New York, in the absence of Congressional consent, to regulate the disposition of this property owned by the United States is, we think, open to grave doubt. It seems clear that a state may not regulate the national government in the discharge of its "governmental" functions. Mayo v. United States, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504, 147 A.L.R. 761; see S.R.A., Inc. v. Minnesota, 327 U.S. 558, 562, 563, 66 S.Ct. 749, 90 L.Ed. 851. In the Mayo case, the issue was whether the United States could be compelled to submit to state inspection of the fertilizer it supplied in carrying out its soil conservation program and to pay the inspection fee imposed by the state. The state was held to be without power in the absence of the consent of Congress to require inspection and payment of the fee, the Court stating, at page 448, of 319 U.S., at page 1141 of 63 S.Ct., 87 L.Ed. 1504, 147 A.L.R. 761, "But where, as here, the governmental action is carried on by the United States itself and Congress does not affirmatively declare its instrumentalities or property subject to regulation or taxation, the inherent freedom [from state interference] continues." The question determined in that case is close to the issue here presented, although it is not clear whether the Supreme Court considered the state law there involved as of both a regulatory and a taxing nature or as a tax measure only. There the government was clearly carrying out a "govern-

---

[1] Laws of 1945, c. 3, 65 McKinney's Unconsolidated Laws § 8528.

[2] See § 1413 of the New York Civil Practice Act; Ridgley v. United States, Mun.Ct.App.D.C., 45 A.2d 475.

mental" function. Here, it had acquired this land for use as a post office site. Having decided not to use it for that purpose, it is now renting it for commercial use. While the property may be what is commonly known as "surplus," the need of the government to do something with it flows from the acquisition of it for use as a post office site.

Because renting this property, for all that appears, is merely a temporary disposal of it pending its sale or devotion to some purpose more clearly "governmental" in character, we think it extremely doubtful whether New York could, if it so desired, regulate its disposition without Congressional consent.

■ But we need not now decide whether, or to what extent, this use of the property was "governmental" in character or whether the distinction between "governmental" and other functions is to be maintained for purposes of determining the validity of state regulation of activities of the United States, unless it appears that New York has attempted to include the United States in the class regulated by the statute on which the appellant relies. And in determining that question, it is to be noted, if we have a choice between two permissible constructions of the statute, one of which leaves its validity clear and the other of which leaves it doubtful or renders the statute invalid, the former construction is to be favored. Driscoll v. Edison Light & Power Co., 307 U.S. 104, 114, 115, 59 S.Ct. 715, 83 L.Ed. 1134; Anniston Mfg. Co. v. Davis, 301 U.S. 337, 351, 352, 57 S.Ct. 816, 81 L.Ed. 1143; N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Northwestern Bell Telephone Co. v. Nebraska State Railway Commission, 297 U.S. 471, 480, 56 S.Ct. 536, 80 L.Ed. 810; United States v. Jin Fuey Moy, 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061; People v. Mancuso, 255 N.Y. 463, 175 N.E. 177, 180, 76 A.L.R. 514; Matthews v. Matthews, 240 N.Y. 28, 147 N.E. 237, 239, 38 A.L.R. 1079.

■■ The statute here involved merely mentions general classes of which the term "landlord" is the one presently relied on. There is nothing specific to show that the New York legislature intended to include the United States itself in the general term "landlord," defined in the act as "An owner, lessor, sublessor, receiver, trustee, executor, assignee or other person receiving or entitled to receive rent for the use or occupancy of the whole or a part of any commercial space." 65 McKinney's Unconsolidated Laws § 8522,(h). And, as a rule, the United States is not within a statute general in terms and divesting pre-existing rights unless there is a manifest intent on the part of the law making body to include it. This principle has recently been re-asserted and relied on, at least in respect to acts of Congress, in United States v. United Mine Workers, 330 U.S. 258, 272 et seq., 67 S.Ct. 677, 91 L.Ed. 884. The courts of New York follow the same rule concerning the effect upon the state government of similar acts of that state's legislature.[3] We think this well established principle of construction applies a fortiori to the acts of a state legislature restricting the rights of a lessor to repossess its own land. So far as we are advised there is no authoritative decision of any New York court interpreting this statute so broadly as to include the United States and until there is we are unwilling to give it a construction that will either make it invalid or raise serious doubt as to its validity. And we need not remand the cause, as we did in Paris v. Metropolitan Insurance Co., 2 Cir., 167 F.2d 834, with directions to the district court to retain the suit pending the determination of proceedings to be brought in the appropriate New York tribunal for the purpose of obtaining an interpretation of the New York statute by the courts of that state. Meredith v. Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7, 88 L.Ed. 9.

Judgment affirmed.

---

[3] People v. Herkimer, Sup.Ct., 4 Cow., N.Y., 345, 15 Am.Dec. 379; Denton v. State, 72 App.Div. 248, 251, 76 N.Y.S. 167, 169; Jewish Hospital of Brooklyn v. Doe, 252 App.Div. 581, 300 N.Y.S. 1111; Lee v. State, Ct.Cl., 187 Misc. 268, 64 N.Y.S.2d 417, 430, 431; Id., 187 Misc. 268, 280, 64 N.Y.S.2d 417; cf. Smith v. State, 227 N.Y. 405, 125 N.E. 841, 13 A.L.R. 1264.