PORT OF NEW YORK AUTHORITY, Landlord, *v.* J. E. LINDE PAPER Co., Tenant.

Municipal Court of the City of New York, Borough of Manhattan, November 30, 1953.

*Sidney Goldstein* for landlord.

*Wasserman, Behr & Shagan* for tenant.

SCHWEITZER, J. This holdover proceeding was instituted by the petitioner, hereinafter referred to as the "Port Authority", to recover possession of certain space occupied by the tenant on the twelfth floor of premises No. 111 Eighth Avenue, New York City, commonly designated as the Inland Terminal No. 1, or Port of New York Authority Building.

In 1929, the Port Authority acquired the land on which the present building was erected. The building in general consists of a large sixteen-story modern building. Concededly, the lease in the instant case is made to a tenant whose business is wholly unconnected with the problem of interstate transportation or any function of the Port Authority. The tenant originally entered into possession under a lease which has long since expired.

An examination of the petition indicates that relief is sought on two grounds. The first and primary ground upon which this holdover proceeding is predicated is that the petitioner is not subject to the restrictive provisions of the Commercial Rent Law (L. 1945, ch. 3, as amd.), hereinafter referred to as the '' Emergency Rent Law '', in that the petitioner falls within the exemptive provisions of subdivision (d) of section 13 (as added by L. 1953, ch. 451), which provides: '' The provisions of this act, likewise, shall be inapplicable to * * * (d) any commercial space with respect to which the state or any city or the New York City Housing Authority has heretofore acquired or shall hereafter acquire the status of landlord.'' The petitioner has also stated a statutory cause of action to recover possession pursuant to subdivision (d) of section 8 of the Emergency Rent Law claiming that it seeks in good faith to recover possession of the commercial space for its immediate and personal use.

The tenant challenges the contention of the petitioner that it is exempt from the necessity for establishing its right to repossession under the Emergency Rent Law, on the ground that the petitioner is engaged in a nongovernmental function in the leasing of space in the Port Authority building, and on the further ground that if it were found that the Port Authority is so exempt under the statute, then the exemptive provision is unconstitutional because it would violate the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution.

Both parties have agreed that in the event the court should decide that the Emergency Rent Law is inapplicable to this petitioner, the statutory cause of action under the Emergency Rent Law shall not require determination.

The Port Authority is a bi-State governmental agency created by an interstate compact between the States of New York and New Jersey (L. 1921, ch. 154; L. N. J. 1921, ch. 151), approved by the Congress of the United States by joint resolution of August 23, 1921. (42 U. S. Stat., ch. 77, p. 174.) The compact directed the Authority to recommend a comprehensive plan

for improving the Port of New York, facilitating its use by the construction and operation of bridges, tunnels, terminals and other facilities. Thereafter, pursuant to State legislation of the two States the Port Authority was designated as the agency of both States to operate the Holland Tunnel and was authorized to construct the Lincoln Tunnel, providing for interstate vehicular traffic passing under the Hudson River. The general functions of the Port Authority are succinctly stated in *Helvering* v. *Gerhardt* (304 U. S. 405, 409, 410) in the following language which is extremely pertinent to the instant issue: '' The Port Authority collects tolls for the use of the bridges and tunnels, and derives income from the operation of the bus line and terminal building, but it has no stock and no stockholders, and is owned by no private persons or corporations. Its projects are all said to be operated in behalf of the two states and in the interests of the public, and none of its profits enure to the benefit of private persons. Its property and the bonds and other securities issued by it are exempt by statute from state taxation. * * * Statutes of New York and New Jersey relating to the various projects of the Port Authority declare that they are ' in all respects for the benefit of the people of the two States, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and the Port Authority shall be regarded as performing a governmental function in undertaking the said construction, maintenance and operation and in carrying out the provisions of law relating to the said [bridges and tunnels] and shall be required to pay no taxes or assessments upon any of the property acquired by it for the construction, operation and maintenance of such ' bridges and tunnels.''

The Port Authority is an arm and agency of the States of New York and New Jersey, and in all of its activities, is engaged in the performance of essential governmental functions. (*Bush Term. Co.* v. *City of New York,* 152 Misc. 144, affd. 282 N. Y. 306; *Commissioner of Internal Revenue* v. *Shamberg,* 144 F. 2d 998, certiorari denied 323 U. S. 792; *Graves* v. *New York ex rel. O'Keefe,* 306 U. S. 466, 484; *Helvering* v. *Gerhardt, supra; Gaynor* v. *Marohn,* 268 N. Y. 417, 424, 425; *People ex rel. Buffalo & Fort Erie Public Bridge Authority* v. *Davis,* 277 N. Y. 292, 299; *Port of New York Authority* v. *Township of Weehawken,* 27 N. J. Superior 328; *Sullivan* v. *Port of New York Authority,* 134 N. J. L. 124; *Miller* v. *Port of New York Authority,* 18 N. J. Misc. 601, 606.)

The Port Authority has uniformly been held to be in the position of "the State" whenever the issue has arisen. For example, its property has been held exempt under subdivision 2 of section 4 of the New York Tax Law as "property of this state." (*Bush Term. Co.* v. *City of New York, supra*); interest on its obligations has been held exempt from Federal income taxation under Internal Revenue Code (U. S. Code, tit. 26, § 22, subd. [b], par. [4]) as obligations issued on behalf of the "state" (*Commissioner of Internal Revenue* v. *Shamberg, supra*); it has been held to be within the scope of the "state's" sovereign immunity from suit (*Howell* v. *Port of New York Authority*, 34 F. Supp. 797; *Hergott* v. *Port of New York Authority*, N. Y. L. J., June 10, 1944, p. 2242, col. 7, affd. 269 App. Div. 770; *Harris* v. *Lord Electric Co.*, 281 App. Div. 693; *Miller* v. *Port of New York Authority, supra*); and it has been held to be exempt and immune as "the State" from municipal regulations (*Port of New York Authority* v. *Township of Weehawken, supra*; see, also, *New Jersey Interstate Bridge & Tunnel Comms.* v. *City of Jersey City*, 93 N. J. Eq. 550). As stated by the court in *Port of New York Authority* v. *Township of Weehawken* (*supra*) which only this year held the Port Authority exempt from municipal regulation and reaffirmed the principles by which it is identified with the States creating it: "what must be remembered is that of the joint sovereignty of the two states the Port Authority is but the performing agent, designed to effectuate particular objects within the sphere of a comprehensive plan. The agency, the objects and the plan are those of the states".

With particular reference to tenant's contention that the Port Authority is engaged in a nongovernmental function in the leasing of space in the Port Authority building, it is sufficient to state that the same contention was made before and rejected by the Court of Appeals in the *Bush Terminal* case (*supra*). It was there held that the Port Authority Building or Inland Terminal No. 1, including the upper stories thereof where the tenant's premises are located, was constructed and is operated and maintained by the Port Authority as a self-sustaining governmental unit in the exercise of the powers of both States for a public purpose in which the People of both States are interested.

Even in the absence of the 1953 amendment specifically exempting the State and cities, the Port Authority would be exempt from the restrictions of the Emergency Rent Law under the well-established rule that general legislation is inapplicable

to the State or its agencies unless there is express language subjecting the sovereign to the terms thereof. (*United States* v. *Wittek,* 337 U. S. 346; *United States* v. *Mine Workers,* 330 U. S. 258; *United States* v. *Weisenbloom,* 168 F. 2d 698; *Bush Term. Co.* v. *City of New York,* 152 Misc. 144, *supra*; *Denton* v. *State of New York,* 72 App. Div. 248; *Jewish Hosp. of Brooklyn* v. *" Doe ",* 252 App. Div. 581, 584; *Port of New York Authority* v. *Township of Weehawken, supra*; *Interstate Bridge and Tunnel Comms.* v. *City of Jersey City, supra*.)   This is based on the fundamental principle enunciated in the cases that general laws are presumed to be for the government of the citizens and not for the sovereign or its agencies.

The Emergency Rent Law (§ 2, subds. [h], [l] as amd. by L. 1953, Ch. 451) defines " landlord " in general terms as:   " An owner, lessor, sublessor, receiver, trustee, executor, assignee or other person receiving or entitled to receive rent for the use or occupancy of the whole or a part of any part of any commercial (business) space."   Similarly, " person " is defined as:   " An individual, corporation, partnership, association, or any other organized group of individuals or the legal successor or representative of any of the foregoing."   Since the enactment, by its terms, does not expressly include the State or its agencies, it is evident that it is not applicable to the Port Authority.

This issue has previously been passed upon by the Supreme Court of the United States in *United States* v. *Wittek* (337 U. S. 346, *supra*) where the court held, upon just such a definition as presented by these statutes, that the Emergency Rent Laws of the District of Columbia were inapplicable to the district's own Housing Authority, a public agency of the Authority type, like the petitioner herein.   Similarly, the United States Court of Appeals for the Second Circuit in *United States* v. *Weisenbloom* (168 F. 2d 698, *supra*) ruled that the New York Commercial Rent Law, the very statute involved in this case, was inapplicable to the United States as lessor of commercial property in New York, since the sovereign is not comprehended within the above definition of " landlord ".   The court recited the rule that a statute general in terms does not apply to the sovereign " unless there is a manifest intent " on the part of the Legislature to include it, noting that (p. 700):   " The courts of New York follow the same rule concerning the effect upon the state government of similar acts of that state's legislature." citing the afore-mentioned New York cases which establish the rule.

The Port Authority is immune from the New York Emergency Rent Laws for another and fundamental reason. The Port Authority, being an instrumentality of the State of New Jersey as well as the State of New York, and engaged in the effectuation of a compact between them is immune from the unilateral imposition of a burden or restriction on its powers by taxation or regulation of one of the States. (*Bush Term. Co.* v. *City of New York, supra*; *Port of New York Authority* v. *Township of Weehawken, supra*.) In the *Weehawken* case (N. J. Superior 328, *supra*) a regulatory measure was held inapplicable to the Port Authority on the ground, among others, that: "the Port Authority, being an agency of the two states and engaged in the effectuation of a compact between them, is immune from unilateral regulation by a municipality of one of the states." This was but a reaffirmation of the principle enunciated by the New York Supreme Court and affirmed by the Court of Appeals in the *Bush Terminal* case (152 Misc. 144, *supra*) that the imposition of a unilateral burden upon the Port Authority, in that case, a tax burden, would be a violation of the compact. As the court there stated (p. 158): " To permit a municipality of the State of New York to impose a tax or levy against the property of the Port Authority located within its territorial limits would destroy the rights and privileges conferred upon the State of New Jersey by the compact. * * * As a result of the compact the property of the Port Authority became exempt from taxation by either State."

The State of New Jersey not having concurred in the Emergency Rent Laws passed by the State of New York nor in their application to the Port Authority, the Port Authority cannot be subject to the New York law. As indicated in the above decisions, this follows not only from the express language in article VII of the port compact, providing that " The Port Authority shall have such additional powers and duties as may hereafter be delegated to or imposed upon it from time to time by the action of the legislature of either state concurred in by the legislature of the other " but is implied from the nature of the obligations mutually undertaken in the compact itself. As the court stated in the *Weehawken* case (27 N. J. Superior 328, *supra*): " The doctrine that no political subdivision of either of the states bound by the compact has power to impede the performance of the obligation thus mutually undertaken is, of course, implicit in the very nature of the compact itself, not to mention also the holdings in the cited cases, specifically and by necessary implication." As a matter of fact, when the Legis-

lature of the State of New York and the Legislature of the State of New Jersey desired to subject the Port Authority to the limitations contained in the New York Rent Control Laws, they did so by way of concurrent legislation. That legislation (L. 1948, ch. 534; L. N. J., 1948, ch. 97) which expired July 1, 1951, gave the Port Authority power to rehouse residents of areas acquired for the effectuation of its facilities, stating therein that with respect to such residential properties the rent laws of either State have full application to the Port Authority, '' as if such rehousing accommodations were constructed, leased or operated by a private corporation.'' (§ 2.)

Thus, by the enactment of such legislation, it was assumed by the Legislatures that property of the Port Authority is exempt from the rent laws, and underscores the legislative intent to exempt the Port Authority from such laws in the absence of such specific concurrent legislation.

It remains only to dispose of tenant's contention that exemption for the Port Authority from the Emergency Rent Law would deprive tenant of the equal protection of the laws and violate the due process clause of the Fourteenth Amendment of the Federal Constitution. This contention is overruled. The Supreme Court of the United States has clearly established that exemption for the sovereign or its agencies does not violate the due process or equal protection clauses of the Fourteenth Amendment because such a classification is completely reasonable. (*Carmichael* v. *Southern Coal Co.*, 301 U. S. 495; *Puget Sound Co.* v. *Seattle*, 291 U. S. 619; *Perley* v. *North Carolina*, 249 U. S. 510.) Bringing the case down to the Port Authority itself, it was held in the *Bush Terminal* case (*supra*) that exemption from general real estate taxation of the very building involved in this case, Inland Terminal No. 1, did not constitute such a violation of the Fourteenth Amendment.

By virtue of the compact and the subsequent pertinent legislation, together with the judicial interpretations thereof, the court holds that the Port of New York Authority is endowed with all of the attributes and immunities afforded to the sovereign State and thereby falls squarely within the exemptive provisions of the Emergency Rent Law. It is not required to establish a statutory ground for dispossession.

Final order for the landlord, the issuance of the warrant stayed in conformance with the stipulation agreed upon between the parties and incorporated in the record.