INTERNATIONAL  SOCIETY  FOR KRISHNA  CONSCIOUSNESS,  INC., and John Winslow, on behalf of themselves and all International Society for Krishna Consciousness members, Plaintiffs,

v.

NEW YORK PORT AUTHORITY, and Walter Lee, Chief of Port Authority Police, Defendants.

No. 75 Civ. 5388.

United States District Court, S. D. New York.

Jan. 14, 1977.

Barry A. Fisher, Fleishman, McDaniel, Brown & Weston, Hollywood, Cal., and Leonard Kaufman, Kommel, Rogers, Kaufman, Lorber & Shenkman, New York City, for plaintiffs.

Patrick J. Falvey by Herbert Ouida, Arthur Berg, New York City, for defendants.

ROBERT L. CARTER, District Judge.

## OPINION

Plaintiff organization, along with the president of its New York temple, brought this civil rights suit for declaratory relief and a preliminary and permanent injunction against the enforcement of three New York Port Authority licensing regulations. The Hare Krishna Society charges that the regulations are unconstitutional on their face and as applied. Plaintiffs claim that the regulations unconstitutionally vest discretion in officials at Kennedy, LaGuardia and Newark airports to grant or deny licenses for the exercise of First Amendment rights—for example, the dissemination of religious literature and the solicitation of contributions—without appropriate standards to govern such discretion. This action was brought pursuant to 28 U.S.C. §§ 2201–02 and 42 U.S.C. § 1983.

*Facts*

The International Society for Krishna Consciousness, Inc. is an international religious organization which espouses the religious and missionary views of Krishna Consciousness. It is duly organized under the laws of the State of New York and maintains temples and schools in cities throughout the United States, including New York City.

The Hare Krishna Society imposes on its members the duty to perform a religious ritual known as Sankirtan, which consists of soliciting and accepting donations and contributions while disseminating religious literature and information in public places. Sankirtan is directed to spreading religious truth as it is known to the Hare Krishna Society, attracting new members, and supporting the Society's religious activities.

Krishna Society devotees have attempted to perform Sankirtan at Kennedy, LaGuardia and Newark airports. These airports come under the jurisdiction of the New York Port Authority. Members of plaintiffs' sect have been informed by Port Authority police that if they solicit donations or disseminate religious literature in por-

tions of the airports leased to airline tenants without the permission of those tenants, they will be subject to arrest for loitering and for trespass. Indeed, criminal complaints for loitering were issued against a number of plaintiffs' members for activities at LaGuardia Airport. While other criminal proceedings that had been pending against Krishna Society members were dismissed at the request of the Port Authority, twelve complaints apparently remain on the books due to the failure of the ten members named in the complaints to appear on the return date set.

Plaintiffs and the Port Authority have worked out an arrangement for the performance of plaintiffs' Sankirtan obligations in areas at the three airports not subject to airline lease agreements. Plaintiffs initially sought to reach similar agreements with the various airline tenants. Pursuant to one such agreement, Eastern Airlines adopted rules which would allow plaintiffs to conduct Sankirtan activities in areas controlled by Eastern. Delta and TWA offered plaintiffs the use of their terminals under similar rules. Plaintiffs, however, subsequently decided that they no longer wished to deal with each of the airline tenants at the three airports, and they now press for the promulgation of appropriate time, place and manner regulations by the Port Authority which would apply to all airport property.

The Port Authority is a bi-state governmental agency created by the States of New York and New Jersey with the consent of Congress (McK.Unconsol.L. § 6401 *et seq.*; N.J.S.A. 32:1–1 *et seq.*; 42 Stat. 174 (1921)). It owns and/or operates various transportation, terminal and other commerce facilities in the bi-state Port District, including Kennedy, LaGuardia and Newark airports. The Port Authority leases space at these airport facilities to various airlines.

The Port Authority is authorized "to make suitable rules and regulations not inconsistent with the constitution of the United States . . . for the improvement of the conduct of navigation and commerce. . . ." (McK.Unconsol.L. § 6419). The Port Authority promulgated the following regulations, found in Title 21, chapter 24 of the New York Code of Rules and Regulations: (1) "No person shall post, distribute or display signs, advertisements, circulars, printed or written matter at any air terminal without permission"[1] (§ 1260.13); (2) "No person shall solicit funds for any purpose at any air terminal without permission" (§ 1260.14); and (3) "No person, unless duly authorized by the Port Authority, shall, in or upon any area, platform, stairway, station, waiting room or any other appurtenance of an air terminal: (a) sell, or offer for sale any article or merchandise; . . . (d) solicit alms" (§ 1260.15). The Port Authority, plaintiffs claim, promulgated no standards to guide the discretion of the officials that are empowered to grant such permission with respect to §§ 1260.-13–.15.

In their initial complaint, plaintiffs named Eastern Airlines and Walter Lee, Superintendent of the Port Authority Police Force, as defendants along with the Port Authority. Only the Port Authority was named as a party in plaintiffs' amended complaint; but Walter Lee was renamed a defendant in plaintiffs' second amended complaint, filed February 3, 1976.

On January 22, 1976, pursuant to F.R. Civ.P. 12(b) and 19, the Port Authority moved to dismiss plaintiffs' complaint[2] on the following grounds: (1) the Port Authority was not a person within the meaning of 42 U.S.C. § 1983; (2) failure to join airlines who are lessees of the Port Authority and, as such, are indispensable parties; (3) fail-

---

1. Permission is granted by the Port Authority Manager or official in charge of an air terminal, or a duly authorized representative, § 1260.-1(e), (h).

2. This motion was addressed to plaintiffs' first amended complaint. Plaintiffs' second amended complaint, filed in February, 1976, is sub-

stantially the same, however, except that it names Walter Lee as a defendant. In any event, defendant Port Authority has had an opportunity to address the second amended complaint in a supplemental memorandum of law.

ure to request the convening of a three judge court; and (4) under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the court should abstain from enjoining the enforcement of, or declaring unconstitutional, a state criminal statute while state criminal prosecutions under the statute are pending against members of plaintiffs' sect.

## I

■ The first ground advanced by the Port Authority for dismissal is failure to state a cause of action under 42 U.S.C. § 1983. It contends that the Port Authority, as an instrumentality of New York and New Jersey, is not a person within the meaning of § 1983, and therefore, dismissal is required. Apparently to circumvent this argument, plaintiff joined the Superintendent of the Port Authority Police Force, Walter Lee, as a defendant. Although the Port Authority had an opportunity to address the issue again following the filing of plaintiffs' second amended complaint, it ignored the inclusion of Lee as a defendant and reasserted its position that dismissal was required because the Port Authority is not a "person" within the meaning of § 1983.

The Second Circuit has held that while municipalities are not deemed "persons" under the Civil Rights Act, "agencies" are, *Forman v. Community Services, Inc.*, 500 F.2d 1246, 1255 (2d Cir. 1974), *rev'd on other grounds sub nom. United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 846 n.11, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). Thus, the State Housing Finance Agency was deemed to be a "person" within the meaning of § 1983. More recently however, the Second Circuit has announced that it doubted the *Forman* opinion intended to "imply that all 'agencies' are persons under § 1983 . . . ." *Monell v. Department of Soc. Serv. of the City of New York*, 532 F.2d 259, 263 (2d Cir. 1976). In *Melani v. Board of Higher Educ. of the City of New York*, 12 EPD ¶ 11,068, p. 4957 (S.D.N.Y.1976), Judge Gagliardi wrote:

"It is well-established that states, municipalities, and other political subdivisions are not 'persons' within the meaning of this section for purposes of assessing money damages, *Monroe v. Pape*, 365 U.S. 167 [, 81 S.Ct. 473, 5 L.Ed.2d 492] (1961), or granting equitable relief, *City of Kenosha v. Bruno*, 412 U.S. 507 [, 93 S.Ct. 2222, 37 L.Ed.2d 109] (1973). It is also well-established that, by virtue of this rule, government agencies are not subject to suit under Section 1983. *Zuckerman v. Appellate Division, Second Department, Supreme Court, State of New York*, 421 F.2d 625 (2d Cir. 1970)."

To determine whether the Port Authority is an agency for the purposes of § 1983, we must consider the extent of governmental control over the activities of the Port Authority and whether the Port Authority performs a governmental function, *Ibid. See also Blanton v. State Univ. of New York*, 489 F.2d 377 (2d Cir. 1973); *Sellers v. Regents of Univ. of Calif.*, 432 F.2d 493 (9th Cir. 1970), *cert. denied*, 401 U.S. 981, 91 S.Ct. 1194, 28 L.Ed.2d 333 (1971); *Samuel v. University of Pittsburgh*, 375 F.Supp. 1119 (W.D.Pa.1974), *appeal dismissed*, 506 F.2d 355 (3d Cir. 1974); *Sams v. New York State Bd. of Parole*, 352 F.Supp. 296 (S.D.N.Y. 1972) (Weinfeld, J.).

The Authority clearly performs an essential governmental function for New York and New Jersey, *Monell v. Department of Soc. Serv. of the City of New York, supra*, 532 F.2d at 263. *See*, e. g. McK.Unconsol.L. §§ 6703 and 6634; *Port of N.Y. Auth. v. J. E. Linde Paper Co.*, 205 Misc. 110, 113–14, 127 N.Y.S.2d 155, 158–59 (1953). It is created by mutual compact of New York and New Jersey, McK.Unconsol.L. § 6404. It is bound to report annually to the legislatures of both states, McK.Unconsol.L. § 6408; and it must get annual appropriations from the states for administrative expenses, McK.Unconsol.L. § 6416. Commissioners of the Port Authority are appointed by the states, McK.Unconsol.L. § 6405. While the Port Authority has certain autonomous powers—e. g., to purchase, construct, lease and/or operate any terminal or transportation facility in the Port District, McK.Un-

consol.L. § 6407—such powers do not represent independence from government, but are necessary for the proper execution of the agency's governmental function. Thus, the New York Port Authority must be deemed a government agency for purposes of the Civil Rights Act and not a "person" within the meaning of § 1983.[3] *See Melani v. Board of Higher Educ. of the City of New York, supra,* 12 EPD ¶ 11,068 at 4960. This conclusion inevitably leads to dismissal of the § 1983 claim against the Port Authority. *Ibid.*

■ Plaintiffs, as indicated, have also sued Walter Lee, individually and in his official capacity as Superintendent of the Port Authority Police Force; he is certainly a "person" within the meaning of § 1983. *Wright v. Chief of Transit Police,* 527 F.2d 1262, 1263 (2d Cir. 1976). Moreover, as the

individual responsible for the enforcement of the Port Authority policy challenged here, Lee plays "a substantial role in the deprivation of the civil rights alleged by plaintiffs." *Ibid.*

## II

■ The defendant next asserts that the complaint should be dismissed for failure to join indispensable parties, F.R.Civ.P. 19. The defendant contends that joinder of the airlines is required because of their substantial interest in the controversy.

The defendant has threatened plaintiffs' members with arrest if they distribute literature or solicit donations in the terminals without permission from the Port Authority in areas controlled by the Authority, or from the airlines in areas leased by them.[4]

**3.** Plaintiffs cite the following cases to support their argument that the Port Authority is a "person" within the meaning of § 1983: *Wolin v. New York Port Authority,* 268 F.Supp. 855 (S.D.N.Y.1967), aff'd 392 F.2d 83, *cert. denied* 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968); *Kissinger v. New York City Transit Authority,* 274 F.Supp. 438 (S.D.N.Y.1967); *Scott v. University of Delaware,* 385 F.Supp. 937 (D.Del.1974); *Hopkins v. Clemson Agricultural College,* 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890 (1911); *George Fuller Co. v. Coastal Plains, Inc.,* 290 F.Supp. 911 (D.La.1968). Close scrutiny of the holdings in these cases, however, reveals that they cannot stand in support of plaintiffs' position.

While the court in *Wolin* found its jurisdiction to rest, in part, on § 1983, it did not directly address the issue of whether the Port Authority was a "person" within the meaning of that statute. As indicated in the text, subsequent cases from this circuit and district tend to refute such a conclusion. *See Monell v. Department of Soc. Serv. of the City of New York,* 532 F.2d 259 (2d Cir. 1976); *Melani v. Board of Higher Education of the City of New York,* 12 EPD ¶ 11,068, p. 4957 (S.D.N.Y.1976). Also, whatever support *Kissinger* may have been for plaintiffs' argument, its suggestion that the New York City Transit Authority is a "person" under § 1983 has since been expressly rejected by this court in *Sams v. New York State Board of Parole,* 352 F.Supp. 296, 298–99 (S.D.N.Y.1972) (Weinfeld, J.).

Plaintiffs' reliance on *Scott v. University of Delaware* is likewise misplaced. There the Delaware district court determined that the state university was a person for purposes of § 1983. The Second Circuit, however, has held that the New York State University was not a "person"

under § 1983, *Blanton v. State University of New York,* 489 F.2d 377 (2d Cir. 1973).

The remaining cases cited by plaintiffs are less relevant to the determination of the question at issue here. The United States Supreme Court in *Hopkins* held that where a public corporation, such as a state agricultural college, acting not in any governmental capacity, but for its own corporate purpose, constructs a dyke which causes damage to another's property, it cannot avail itself of the state's constitutional immunity from suit. Likewise *Moss* held the Indiana Toll Road Commission was not an arm of the state and therefore was amenable to suit. *George A. Fuller Co.* held that the Board of Commissioners of the Port of New Orleans was an independent agency; therefore, it was a citizen for purposes of diversity jurisdiction and amenable to suit at least in contract actions.

None of these cases addresses the question what is a "person" within the meaning of § 1983, although ascertaining whether an agency is independent of the state and therefore amenable to suit or a citizen for diversity purposes admittedly involves similar reasoning. In any event, because the Port Authority performs an essential governmental function and is an arm of the states of New York and New Jersey, nothing in these cases requires my determining the Port Authority to be a "person" under § 1983.

**4.** As noted above, the Port Authority has apparently agreed to allow plaintiffs to distribute literature and solicit donations in the public portions of Kennedy, LaGuardia and Newark terminals. However, it is the Port Authority's position that it loses the power to grant such permission once it leases space to tenants, Tr.

Plaintiffs argue that the Port Authority regulations govern activity on all property owned or operated by the Authority at the three airports, including property leased to private airline companies. They contend that the lease agreements between the Port Authority and the airlines provide that the rules and regulations of the Port Authority, including the regulations challenged here, shall apply to the leased premises and that the defendant was attempting to enforce these regulations when it threatened plaintiffs with arrest. Plaintiffs also maintain that the discretion vested in Port Authority officials to license the exercise of First Amendment rights has not been delegated to any of the airport lessees. Alternatively, they argue that if there has been such a delegation, no standards guide the discretion of the airport lessees; and even if there were standards, the Port Authority is without the power to delegate authority to license the exercise of First Amendment rights to private parties.

Defendant on the other hand, asserts that the airlines control spaces leased to them, not the Port Authority. Threats of arrest were made in an effort to assist the airlines in keeping plaintiffs off leased premises as loiterers, N.Y.Penal Law § 240.35(7), and not pursuant to the regulations challenged by plaintiffs.

I find the airline lessees should be joined under Rule 19(a). As I stated in *Robertson v. National Basketball Ass'n*, 389 F.Supp. 867, 878 (S.D.N.Y.1975):

"[t]he purpose of Rule 19(a) has been defined as a requirement 'to bring before the court all persons whose joinder would be desirable for a just adjudication of the action. . . . ' Wright & Miller, Federal Practice and Procedure: Civil § 1604, at 32 (1972). Rule 19(a) is applicable when (1) failure to join an absentee would prevent complete relief or (2) where an absentee 'claims an interest in

relating to the subject of the action and is so situated' that its absence will impair its ability to protect that interest or will leave any of the parties subject to multiple or inconsistent obligations, and the risk of the latter is substantial." (citations omitted)

The application of this test to the instant situation demonstrates that joinder is appropriate. Joinder of the airlines would not affect the issue of subject matter jurisdiction. Since the possible determination by this court that the Port Authority, and not the airlines, has power to make regulations regarding the licensing of First Amendment activities in leased areas would substantially affect the rights of the airlines under their lease agreements, joinder is desirable for a just adjudication. Moreover, plaintiffs seek to enjoin defendant from interfering, directly or indirectly with their right to be in public portions of the airports. Were this court to find that the Port Authority regulations did not extend to leased areas, the relief sought by plaintiffs would require a determination that areas leased to airline tenants nevertheless constituted First Amendment forums, and that New York penal statutes could not be invoked to prevent the exercise of First Amendment rights there. Surely the airlines should have an opportunity to be heard on this issue. See, e. g., *International Soc'y for Krishna Consciousness School for Adv. of Vedic Arts and Sciences for Youth in Am.-Gurukula v. Dallas-Fort Worth Regional Airport Bd.*, 391 F.Supp. 606, 612 (N.D.Tex. 1975). In any event, "complete relief" would necessitate airline input on the types of regulations required to satisfy plaintiffs' First Amendment rights, and yet comport with efficient terminal operations.

Despite the fact that plaintiffs ignored the court's repeated admonitions that the airlines would probably have to be joined, dismissal of the action for failure to join the

Hearing, Oct. 30, 1975, p. 4; Tr. Hearing, Feb. 20, 1976, pp. 22–23. This agreement does not affect the course of this litigation. The Port Authority has not conceded the illegality of its regulations, which means this issue is not moot, see my opinion in *Monroe v. Bombard*,

422 F.Supp. 211, 215 n.5 (S.D.N.Y.1976); nor, obviously does the agreement answer whether the Port Authority's power to issue regulations concerning the licensing of First Amendment activities extends to leased areas in the three airports.

airlines as indispensable parties would be premature at this time. Plaintiffs are directed to file an amended complaint, within a reasonable time, joining all airline tenants as party defendants. Until such joinder is accomplished, any grant of injunctive relief would be improper.

### III

The defendant claims that plaintiffs' failure to request the convening of a three judge court under 28 U.S.C. § 2281 requires dismissal of their complaint. Alternatively, defendant urges that in light of pending criminal prosecutions in the state courts, the court should abstain under the principle of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

The recent Three Judge Court Act repeals § 2281, eliminating the requirement for convening a three judge court where the enforcement of a state statute is sought to be enjoined on the ground of unconstitutionality, P.L. 94–381, August 12, 1976. Section 7 of the new Act, however, states that "[this] Act shall not apply to any action commenced on or before the date of enactment." Therefore, the instant case is to be treated as if § 2281 were still in force.

■ Where no substantial question is raised as to the constitutionality of a challenged statute or regulation, a three judge court need not be convened.[5] *See Bailey v. Patterson*, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). State laws or regulations vesting discretion in government officials to grant or deny licenses for the exercise of First Amendment rights in a public forum without providing narrow and objective standards to guide discretion are clearly unconstitutional, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Cant-*

*well v. Connecticut*, 310 U.S. 296, 305, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). The constitutional requirements are clearly delineated in this area.

■ Therefore, while the airline tenants must be joined and allowed to participate in this action before there can be a determination as to the reach of the Port Authority regulations, to the extent that the regulations have any force or effect, no substantial federal question is raised by the challenge here. Accordingly, it is unnecessary to convene a three judge court.

■ Nor is abstention warranted in this case. The abstention cases cited by defendant pronounce a national policy forbidding federal courts to stay or enjoin pending state court proceedings, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) or to declare a state law unconstitutional while state prosecutions are pending under that law, *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Defendant claims that abstention is appropriate because ten members of plaintiffs' sect are subject to prosecution for violation of New York Penal Law 240.35(7).

This action challenges the validity of Port Authority regulations §§ 1260.13–.15, not Penal Law 240.35(7). Strictly speaking, therefore, no state prosecutions with respect to the contested regulations are currently pending, making, it would seem, the requisites of *Younger* and *Samuels* inapplicable, *International Society for Krishna Consciousness, Inc. v. Lamb*, Civ. No. 75–88 (D.Nev.1975) at 3–4.

A potential issue in this case, however, is whether application of Penal Law 240.35(7) to members of plaintiffs' sect who are engaged in First Amendment activities is unconstitutional no matter what determination is made as to the reach of Port Author-

---

5. Moreover, there is some doubt as to whether the challenged regulations could be considered to have state-wide application. A three judge court need not be convened where an action is brought against state officers performing matters of purely local concern, or attacking a law that affects only a particular municipality or

district. *Moody v. Flowers*, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); *Rorick v. Board of Comm'rs of Everglades Drainage Dist.*, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242 (1939); *Holmes v. New York City Housing Authority*, 398 F.2d 262 (2d Cir. 1968); *Bouffier v. Frank*, 389 F.Supp. 502 (E.D.N.Y.1975).

ity regulations. A defense to state prosecution on this ground would raise a significant abstention question with regard to these proceedings. For this reason, it is important to note that the Port Authority agreed to request the dismissal of state proceedings against plaintiffs' members for the alleged violation of Penal Law 240.35(7). Therefore, while complaints against some Krishna members may technically remain on the books because they failed to appear on the return date,[6] no evidence has been offered to show that these persons are being or will be prosecuted for violating New York's loitering law. Under these circumstances, a declaration or injunction by this court could not be considered to interfere with or interrupt the state criminal process within the meaning of *Younger* or *Samuels. Cf. 414 Theatre Corp. v. Murphy,* 499 F.2d 1155, 1161 (2d Cir. 1974) (where prosecution for violation of city ordinance is only threatened and not pending, abstention is not required); *International Soc'y for Krishna Consciousness School for Adv. of Vedic Arts and Sciences for Youth in Am.–Gurukula v. Dallas-Fort Worth Regional Airport Bd., supra,* 391 F.Supp. at 609. (Abstention is not warranted where members of plaintiff organization are charged with violation of city ordinance but no prosecutions against them are pending and no prosecution is pending against the organization itself).

In any event, no prosecutions are pending against plaintiff Winslow. Under *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) and *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), he is not barred from suing for the relief sought here; and it is doubtful that state proceedings against individual members of the Krishna Society could prevent the society from pressing its claim on behalf of members not subject to state prosecution.

· · For the reasons set forth, the motion to dismiss is granted as to defendant Port

Authority and denied as to defendant Lee. Defendant Lee is given leave to renew his motion to dismiss should plaintiffs fail to join necessary parties in a reasonable time. Plaintiffs' motion for a preliminary injunction is also denied.

The foregoing shall constitute the court's findings of fact and conclusions of law in accordance with F.R.Civ.P. 52(a).

IT IS SO ORDERED.

---

**6.** Defendant concedes that "[o]ther criminal proceedings that had been pending against members of plaintiffs' sect were dismissed at the request of the Port Authority" presumably because those members appeared at the appropriate time, Defendant's Memorandum of Law in Support of Motion to Dismiss, p. 23.