In the Matter of the Application of WILLIAM J. FARRELL and Others, Appellants, against THE BOARD OF HEALTH OF THE CITY OF OSWEGO and Another, Respondents.

Fourth Department, January 9, 1935.

*John Tiernan,* for the appellants.

*Harry C. Mizen,* for the respondents.

EDGCOMB, J. Upon the certiorari order now before us, we are asked to review the determination of the board of health of the city of Oswego, and to correct an alleged error of that body claimed to have been committed in the appointment of George M. Desens health inspector and clerk in the place and stead of William J. Farrell, one of the petitioners, and Anita T. Murray and Florence Jane Tully, health nurses in the place of Jessie B. Grant and Florence Daley, the other applicants for relief.

Whatever may have been the situation in the past, it is conceded that the present board of health of the city consists of seven members, and that Richard G. Cullivan, the mayor of the city, is one of the persons composing the board, and is its president.

In January, 1934, there were vacancies existing in the office of clerk and inspector of the board and of health nurses. These positions, having been placed in the competitive class, could only be filled from an eligible roll. Accordingly, application was made to the civil service commission of the city for such a list. The commission certified but one name as qualified for appointment as clerk and inspector, and advised the board that no eligible list existed for designations as nurse. Acting under the provisions of

section 15 of the Civil Service Law, the board filled these three positions temporarily by appointing William J. Farrell, clerk and inspector; Jessie B. Grant, head nurse; and Florence Daley, assistant nurse. Under the statute these appointments were not effective for more than four months. Accordingly, a request was made for a new list, and on February 16, 1934, the civil service commission certified the names of George M. Desens and William J. Farrell as eligible for permanent appointment as health inspector and clerk, and Anita T. Murray, Florence Jane Tully, Jessie B. Grant and Florence Daley as legally qualified for appointment as health nurses. At a meeting of the board of health held on the 25th day of April, 1934, and within four months after the provisional appointments were made, resolutions were offered appointing George M. Desens health inspector and clerk, Anita T. Murray, head nurse, and Florence Jane Tully, assistant nurse, at designated fixed salaries. These resolutions were adopted by a vote of four to three, Mayor Cullivan being one of the four voting in favor of the appointments. The appointees immediately entered upon the discharge of the duties of their respective offices, and are now filling said positions.

Asserting that Mayor Cullivan's membership upon the board of health is honorary and advisory only, and that he is shorn of all real or genuine power, and that he had no right to vote upon the resolutions appointing the present incumbents to their respective positions, and that the actual vote stood three to three, and that, consequently, the resolutions were never legally adopted, petitioners bring this proceeding, and ask us to review the determination of the board, and declare the appointments void and ineffective.

Ordinarily, a membership on any board or body carries with it a right to vote. A restriction upon such power will not be extended beyond the limitation clearly intended to be imposed by the law, rule or order creating the restraint.

The present charter of the city of Oswego (Laws of 1895, chap. 394) became a law on the 24th day of April, 1895. No local board of health was created by the act, and the duties usually performed by such a board were not delegated to any official. The Public Health Law of 1893 (Laws of 1893, chap. 661) was in effect at the time. It provided (§ 20) for the continuation of local boards of health in the several cities, villages and towns of the State, and decreed that such boards in all cities, with several specified exceptions, which do not include Oswego, should consist of the mayor of the city, who should be its president, and at least six other persons, one of whom should be a competent physician, who should be appointed by the common council, upon the nomination of the mayor, and who should hold office for three years.

When the Oswego charter was passed, the intention of the Legislature to preserve and continue the provisions of the Public Health Law relating to the local board of health is too plain to be questioned, and, so far as appears, has never been disputed. Section 4 of the act made the members of such board city officers, and section 5 provided that no one should be eligible to membership, unless he was assessed for real or personal property.

The 1893 statute was superseded by the present Public Health Law (Laws of 1909, chap. 49). The new act follows generally the provisions of the old statute, with many new measures added. So far as the Oswego board of health is concerned, there is no material difference in the two acts.

In 1922 the Legislature amended the Oswego city charter (Laws of 1922, chap. 596). By this amendment title XVIII, creating a department of public safety, was added to the charter. Section 417 gives the commissioner of public safety authority to appoint a health officer and a clerk, and section 422 transfers to such commissioner the powers and duties of the local boards of health, so far as they pertain to cities of the third class. Oswego is such a city. This later method of handling the local health matters continued without change until 1932, when Local Law No. 3 was passed by the common council, pursuant to the Home Rule Amendment. This law not only created a board of health, and gave to it all the powers and subjected it to all the duties imposed by law upon similar bodies, but decreed that such board should consist of the mayor, and six members appointed by the common council, upon the nomination of the mayor. The provision relating to the personnel of the board is similar to that contained in the Public Health Law, with the exception that the local law does not make the mayor president of the board, and does not require that a competent physician shall be appointed as one of its other members.

So far, it will be noted that no prohibition has been placed upon the power of the mayor to vote upon propositions coming before the board of which he is made a member. The petitioners assert, however, that such injunction is found in section 65 of the Oswego city charter (Laws of 1895, chap. 394), and they stake their right to relief upon that provision. It reads as follows: " The mayor shall be *ex officio* a member of each department of said city, but without a vote."

Just what did the Legislature have in mind when it passed the above-quoted edict? The answer to that question determines this controversy, because the intent of the law-making body is the basic rule which underlies and governs the construction of all statutes. (*Farmers' Bank* v. *Hale*, 59 N. Y. 53, 57; *People ex rel.*

*Twenty-third St. R. R. Co.* v. *Comrs. of Taxes of N. Y.*, 95 id. 554, 558; *People ex rel. Mc Neile* v. *Glynn*, 128 App. Div. 257.)

In determining such intent, it is proper, and many times necessary, to trace the history of legislation upon the subject in order to ascertain the uniform and consistent purpose and aim of the law-making body, and to discover how its policy with reference to the matter has been changed or modified, if at all. Various statutes relating to the same subject-matter should be read together, and reconciled, so far as possible, in an effort to read the mind of the Legislature. (*Matthews* v. *Matthews*, 240 N. Y. 28, 36; *Smith* v. *People*, 47 id. 330, 336; 339; *People* v. *Home Insurance Co.*, 92 id. 328, 339; *Weir* v. *Barker*, 104 App. Div. 112, 114; McKinney's Consolidated Laws, vol. 1, Statutes and Statutory Construction, § 67.)

It will be noted that section 65 of the charter applies only to departments of the city. If the board of health is not a department, then that section has no application. Section 119 of the charter enumerates the divisions of executive government. The department of health is not so designated in the original charter, and, although new departments were added from time to time, it was not until 1933, when Local Law No. 12 was passed by the common council, that the health department was added to the list. Until that was done, it is difficult to understand, even if we were to confine our investigation simply to the charter itself, how the mayor's membership on the board was restricted and limited as the petitioners claim, because that restraint applies only to departments of the city government.

Did the creation by the common council in 1933 of a division of executive government to be known as the health department make the restrictions contained in section 65 of the charter applicable to that department, and deprive the mayor of a vote on the board of which he had been made a member, not by the charter, but by both the Public Health Law and Local Law No. 3? There is nothing to indicate that the common council had any such idea in mind. It was only the year before that the council had recreated the board of health, and had made the mayor a member, without any restrictions whatever upon his right to vote, and had transferred to such board all health matters, which for a time had been administered by the commissioner of public safety under the 1922 amendment to the charter. There is no express modification or recall of any provision of Local Law No. 3 in the ordinance adopted the following year. While a statute or provision may be rescinded or abrogated by inference, the courts do not look with favor upon repeal by implication. (*Lyddy*

v. *Long Island City*, 104 N. Y. 218; *People ex rel. Bronx Parkway Comm.* v. *Common Council*, 229 id. 1; *Kings County Lighting Co.* v. *City of New York*, 176 App. Div. 175; affd., 221 N. Y. 500.)

These two local acts and the Public Health Law and the city charter can all be read together as one statute, and their provisions can be harmonized in so far as they apply to the membership on the local board of health. As already pointed out, that should be done, if possible, whenever statutes are in *pari materia*. The Public Health Law created the board originally, Local Law No. 3 recreated it after the 1922 amendment of the charter had transferred its powers and duties to the commissioner of safety. The local act and the Public Health Law are in no way antagonistic. One supplements the other. It would be a strained construction to read into the very acts which created and established the board of health, and fixed its membership, and which placed no limitation on the power of the mayor as a member thereof, the restrictions upon his right to vote as specified in section 65 of the city charter.

The purpose of section 65 is apparent. The administrative power of the city is vested in the mayor and the various departments. The mayor, the chief executive officer of the city, is made a member, *ex officio*, of the various departments, so that he may keep in touch with the business of the city, and may aid with his counsel and advice, but he is not permitted to vote. His limited powers thus conferred cannot, however, be held to deny him such authority in cases, such as the present, where he is expressly made a member of a board by some act which creates the body itself, and which does not gainsay him that privilege.

Petitioners rely largely upon the Geneva board of health case (*People ex rel. Young* v. *Gulvin*, 164 App. Div. 768), which holds that the charter of the city of Geneva governs and controls the appointment of the members of the board of health of that city, rather than the Public Health Law. There, as here, the Public Health Law of 1893 was in effect at the time of the adoption of the city charter. There the charter not only created a board of health, but declared in plain and unambiguous terms that it should consist of five members to be appointed by the mayor for a term of five years, which was an entirely different provision from the one contained in the Public Health Law. The two requirements were not only unlike, but they could not be reconciled. The intent of the Legislature was unmistakable, and the court, under such circumstances, very properly applied the well-recognized rule that a special statute, applicable to one locality only, supersedes a State-wide act upon the same subject. The two cases have no analogy, so far as the question before us is concerned.

There is another reason, it seems to me, why the prayer of the petition should be denied. If we were to give to the charter the interpretation contended for by the petitioners, it would leave an even number of voting members on the board, a situation which is always fraught with danger, and which should be avoided, if possible. In case of a hopeless deadlock, such as we have here, if the mayor is deprived of a vote, the board becomes a futile, ineffective and useless body. As well might there be no board at all, as one in name only. If political or unworthy considerations were allowed to creep in and control the action of the members, the business of the department in case of a tie vote would be at a standstill, and public interests would be in peril. Public health is a most important department of government, and one which should not be allowed to suffer while men fight for spoils or over petty differences. Even an honest difference of opinion, if the members were evenly divided, and persisted in their views, would prevent action. Public welfare will not permit such a condition to continue, and the courts should never give a construction to an ambiguous statute which will bring about such a result, unless the intent of the law-making body is so plain that one cannot wink so hard as not to see it. A practical interpretation of a statute, one which will prevent harm and mischief, and which will give life and force to a public body, should always be sought, if possible. A bad result always suggests a wrong construction. (*Matter of Rouss*, 221 N. Y. 81, 91; *People* v. *Fitzgerald*, 180 id. 269, 275; *People ex rel. Beaman* v. *Feitner*, 168 id. 360, 366; *People ex rel. Nechamcus* v. *Warden, etc.*, 144 id. 529, 536.)

Having reached the conclusion that the action of the board of health in the matter of these appointments was regular and legal, it is unnecessary to discuss the point urged by the respondents that the petitioners are not aggrieved, because their provisional appointments ended by action of law four months after they were made (Civil Service Law, § 15), and before the commencement of this proceeding, and that, therefore, they are not entitled to this certiorari order.

Inasmuch as the board of health did not violate any rule of law affecting the rights of the parties to this proceeding which in any way prejudiced the petitioners, it follows that the order of certiorari should be annulled, with fifty dollars costs and disbursements.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, CROSBY and LEWIS, JJ.

Determination of the board of health of the city of Oswego confirmed, with fifty dollars costs and disbursements.