THE JEWISH HOSPITAL OF BROOKLYN, Respondent, *v.* " JOHN DOE " and " RICHARD ROE," Said Names " John Doe " and " Richard Roe " Being Fictitious, Real Names Being Unknown to Plaintiff, Said Persons Being the President and Treasurer Respectively of HOSPITAL EMPLOYEES' UNION OF GREATER NEW YORK, LOCAL 171, and MORRIS BERLIN, as Acting President and as Vice-President of Said Defendant, Local 171, Appellants.

Second Department, December 10, 1937.

*William H. Miller* [*Leon Liner* with him on the brief], for the appellants.

*Benjamin C. Ribman,* for the respondent.

*Arthur A. Ballantine, Joseph M. Proskauer* and *Roderic Wellman,* for Greater New York Hospital Association, as *amicus curiæ.*

*Carol King* and *Samuel Paul Puner,* for New York Civil Liberties Committee and International Juridical Association, as *amici curiæ.*

JOHNSTON, J.  This appeal involves the construction of section 876-a of the Civil Practice Act (Laws of 1935, chap. 477), which, in substance, provides that no court shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of a labor dispute, except after a hearing and after the making of certain findings therein specified. The statute further provides that a case is deemed to involve or grow out of a labor dispute when it " involves persons who are engaged in the same industry, trade, craft or occupation, or who are employees of one employer," or when it " involves any conflicting or competing interests in a ' labor dispute ' * * * of ' persons participating or interested ' therein (as hereinafter defined)."  The statute defines a person or association participating or interested in a labor dispute as the one against whom relief is sought " if he or it is engaged in the industry, trade, craft or occupation in which such dispute occurs, or is a member, officer or agent of any association of employers or employees engaged in such industry, trade, craft or occupation."  The statute also defines a labor dispute as " any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee."

Plaintiff, a charitable membership corporation, maintains a large hospital in Brooklyn, which it operates as a public, charitable and non-sectarian institution for the care of the sick.  The hospital is supported, in the main, by payments from the city of New York and by voluntary contributions from other sources.  It employs and pays wages to nine hundred and eighty-three persons and also has a staff of approximately five hundred physicians and sixty-five internes.  In addition, it maintains at its own expense a training school for one hundred student nurses.  In 1936 it furnished treatment to over two thousand patients sent to it by the city, at a cost

of $234,000, of which the city paid only $93,400. Thirty-six per cent of its service is rendered without cost to the patients or the city, and sixty-four per cent is furnished at a loss. It has fifty-three officers and directors, all of whom serve without compensation.

Defendants are the officers and members of Local 171 of the Hospital Employees' Union of Greater New York, an unincorporated association, which includes only maintenance employees.

It is alleged that, although less than ten per cent of plaintiff's employees are members of the union, defendants sought to unionize all plaintiff's employees and demanded that plaintiff grant all its employees a wage increase of twenty-five per cent; that each employee be given a full day off each week; that no employee be required to work more than eight hours a day; and that plaintiff recognize the union as the sole bargaining agent for its employees. When plaintiff refused to comply with their demands, defendants called a strike and resorted to certain activities, some of which, by this action, plaintiff seeks to enjoin. The acts complained of may be summarized as follows: Disorderly mass picketing accompanied by shouting, intimidation and libelous statements; sounding of a false fire alarm in the hospital buildings; distribution of circulars containing false statements; taking possession of the kitchen and laundry facilities of the hospital; picketing the offices and homes of plaintiff's directors and physicians and also the meetings of the Brooklyn Federation of Jewish Charities with placards containing false and libelous statements; assaulting plaintiff's employees who refused to join the union and to participate in the strike; engaging in a sitdown strike and discontinuing the operation of elevators, thus producing chaos and disorder and endangering the lives of more than four hundred patients. Defendants, while admitting they engaged in picketing and planned the sitdown strike, deny they were parties to the assaults or committed any unlawful act.

The Special Term, on affidavits and without a hearing, made an order enjoining the defendants *pendente lite* from interfering in any manner with the conduct and operation of the hospital by calling, instigating or continuing a strike of plaintiff's employees, or picketing the hospital and the offices and homes of its directors and doctors, or engaging in other activities.

The sole question to be determined is: Does a charitable corporation such as plaintiff come within the purview of the statute (Civ. Prac. Act, § 876-a)? We believe, even though the statute does not expressly exempt charitable corporations, that the Legislature never intended it to apply to an institution such as plaintiff. While those involved in a labor dispute, as defined by the statute, need not stand in the relation of employer and employee, they must be

engaged in the same " industry, trade, craft or occupation." These words connote and emphasize one common thought, to wit: that the parties to the controversy shall be engaged in the same business enterprise or commercial pursuit, one motivated by the desire for profit, the other by the desire to earn a livelihood. Plaintiff is not thus engaged, nor are its sponsors or supporters moved by any selfish or pecuniary consideration. Plaintiff's function primarily — perhaps exclusively — is charitable; to care for the sick and disabled and to relieve their suffering and distress whether they are or are not able to pay for the service they receive. While some patients pay, most are unable to do so; and during the last several years the voluntary contributions plus the city's payments have been insufficient to meet the operating expenses. Obviously plaintiff is not engaged in any industry, trade, craft or occupation for profit within the meaning of the statute.

It is an ancient rule that general words in a statute neither include nor bind the government by whose authority it was enacted " ' where its sovereignty, rights, prerogatives or interests are involved. ' " (*Denton* v. *State of New York*, 72 App. Div. 248, 251.) It is also a well-settled doctrine that a statute prescribing in general terms procedural requirements is not applicable to the State or its political subdivisions unless such entities are specifically included in the statute. (*Bush Terminal Co.* v. *City of New York*, 259 N. Y. 509; *Davidson* v. *City of New York*, 221 id. 487; *Uvalde Asphalt Paving Co.* v. *City of New York*, 149 App. Div. 491.)

Plaintiff, in caring for the indigent sick, is discharging, at least in part, a function which ordinarily devolves upon the government. The city sends to it " free patients," for whose treatment it is only partly reimbursed by the city. To the extent that it renders such service plaintiff is in fact, if not in name, a governmental agency performing a governmental function which ordinarily belongs to and usually is discharged by the State. (*Corbett* v. *St. Vincent's Industrial School*, 177 N. Y. 16; *Hughes* v. *County of Monroe*, 147 id. 49.) The instant statute, which is clothed in general language, is designed to effect a reform in procedure pertaining to the issuance of injunctions in labor litigations. The same doctrine that excludes the State and its political subdivisions from the statute requires a holding that a charitable institution such as plaintiff is also excluded.

While the preamble to the statute is not controlling, it is of some aid in ascertaining the intention of the Legislature in enacting the statute. The legislative purpose, as therein declared, was to correct a practice " peculiarly subject to abuse in labor litigations " by the granting of injunctions on affidavits without notice and without a hearing. With the wisdom or propriety of the law the

courts have nothing to do, and whether a law be needful is a legislative and not a judicial question. But in accepting, as we must, the policy of the statute as declared by the Legislature, that it was necessary to effect a reform in the issuance of injunctions " in labor litigations," the legislative purpose could have no relation to charitable corporations and their employees because, as far as we have been able to learn, no injunction ever was issued in a labor dispute involving a charitable institution. That charitable corporations were not meant to be included within the statute finds support in the history of labor's struggle for shorter hours, increased wages and better working conditions. The conflict, which is almost as old as labor itself, always was between those whose capital was invested in business for profit and those whose efforts contributed to the earnings of profits. Therefore, it is reasonable to assume, in the absence of express language to the contrary, that in enacting the statute the Legislature had in mind industrial and commercial enterprises organized for profit and the labor controversies and litigations incident to their operation, and not nonprofit charitable institutions such as plaintiff.

It is argued that if the Legislature did not intend the statute to apply to charitable corporations it would have expressly exempted them. But, to quote the late Justice HOLMES, " Upon this point a page of history is worth a volume of logic." (*New York Trust Co.* v. *Eisner,* 256 U. S. 345, 349.) The recent history of legislation affecting labor shows it never was contemplated that charitable institutions be included within the instant statute. This statute, as well as the statutes relating to the punishment for contempt arising out of the failure or refusal to obey a mandate contained in an injunction order in a case involving a labor dispute (Civ. Prac. Act, § 882-a, and Judiciary Law, § 753-a), not only was modeled after the Federal Norris-LaGuardia Act (U. S. Code, tit. 29, § 113) but contains almost its identical language. The latter act was passed when the United States Supreme Court held that the Clayton Act of October 15, 1914, applied only to labor disputes between employer and employee. (*Duplex Co.* v. *Deering,* 254 U. S. 443.) It was to spread the protection against the injunctive process to all those engaged in the same industry, trade, craft or occupation, regardless of whether or not the disputants stand in the relation of employer and employee, that the Norris-LaGuardia Act was passed. To lose sight of this dominant purpose and to hold that the Norris-LaGuardia Act and our statutes which follow it were intended to apply to non-profit charitable corporations, is to extend the scope of these statutes to parties never contemplated. Viewing them, as we should, in the light of the claimed evil or

mischief sought to be remedied and the avowed objects sought to be attained, it is clear that charitable corporations do not come within their scope.

We also believe that the instant statute and the New York State Labor Relations Act (Laws of 1937, chap. 443), although passed at different sessions of the Legislature, are *in pari materia*. While each deals with its own peculiar subject, both have similar aims. One common purpose underlies them both — to aid labor in its struggle to improve its lot. Both statutes should be read together and reconciled as far as possible in an effort to read the mind of the Legislature. (*Matthews* v. *Matthews*, 240 N. Y. 28; *Matter of Farrell* v. *Board of Health, Oswego*, 243 App. Div. 332, 336.) In enacting both statutes the Legislature recognized labor's right to strike and to resort to peaceful picketing and other lawful activities free from interference by the courts, except upon certain specified conditions, and also recognized labor's right to organize and bargain collectively, free from interference, restraint or coercion by employers. The Labor Relations Act — unlike the instant statute — expressly provides it shall not apply " to employees of the State or of any political or civil subdivision or other agency thereof, or to employees of charitable, educational or religious associations or corporations." This exemption is merely declaratory of previously known and existing public policy, that the groups enumerated fall without the scope of such legislation unless specifically included therein. It may be said that it was inserted in the statute out of an abundance of caution.

The instant statute must be read in the light of well-defined principles of construction. The Legislature is presumed to have intended that good will result from its laws, and a bad result suggests a wrong interpretation. (*People ex rel. Beaman* v. *Feitner*, 168 N. Y. 360, 366.) In interpreting a statute it cannot be presumed the Legislature intended unwise or injurious results to flow from its action, and where one construction would result in mischievous or disastrous consequences a more fortunate construction must be sought. (*Hayden* v. *Pierce*, 144 N. Y. 512; *Matter of W. S. A. & P. R. R. Co.*, 115 id. 442.) It is unnecessary to describe the hardship, suffering and disaster that would follow if the instant statute, with the delay which its requirements entail, were held applicable to a charitable corporation such as plaintiff.

We believe it is not open to doubt that the Legislature did not intend the statute to be applicable to such institutions even though it did not expressly exempt them. " The law-makers cannot always foresee all the possible applications of the general language they use; and it frequently becomes the duty of the courts in con-

struing statutes to limit their operation, so that they shall not produce absurd, unjust or inconvenient results not contemplated or intended. A case may be within the letter of the law, and yet not within the intent of the law-makers; and in such a case a limitation or exception must be implied." (*L. S. & M. S. R. Co.* v. *Roach,* 80 N. Y. 339, 344.) Therefore, we conclude that the Special Term was justified in granting the injunction *pendente lite* without regard to the regulatory provisions of the statute.

Appellants also attack the sufficiency of the complaint because of plaintiff's failure to set forth the facts required by the statute. As we hold plaintiff does not come within the scope of the statute, we need not consider whether the complaint is sufficient in that respect.

The order granting plaintiff's motion for an injunction *pendente lite* and the order denying defendants' motion to dismiss the complaint should be affirmed, with ten dollars costs and disbursements.

HAGARTY, CARSWELL, DAVIS and ADEL, JJ., concur.

Order granting plaintiff's motion for an injunction *pendente lite* and order denying defendants' motion to dismiss the complaint affirmed, with ten dollars costs and disbursements. Defendants may serve their answer within ten days from the entry of the order hereon.