Chief Judge Ftrim.
These appeals require us to pass upon a fundamental question of high importance in connection with the enforcement of the provisions of the recently enacted Taylor Law (L. 1967, ch. 392; Civil Service Law, art. 14, §§ 200-212). Are public employees or the unions which represent them entitled, as a matter of right, to trial by jury in a criminal contempt proceeding brought against them for alleged violation of section 210 (subd. 1) of that statute, in that (as to the employees) they engaged in a strike and (as to the organizations) they instigated, encouraged or condoned such strike?
*114 In the present case, the Corporation Counsel of the City of New York sought an order—pursuant to section 211 of the Civil Service Law and sections 750 and 751 of the Judiciary Law—to punish the defendants for criminal contempt, claiming that they had willfully disobeyed the restraining provisions of the temporary injunction issued by the Supreme Court on September 9, 1968. The defendants’ demand for a trial by jury, based on their claim that they are entitled to such a trial as a matter of right by virtue of statutory and constitutional provisions, was rejected by Special Term, and its resulting orders were unanimously affirmed by the Appellate Division. The appeals are before us by leave of the latter court on certified questions.
The statutory provisions on which the several defendants rely are section 753-a of the Judiciary Law and section 808 of the Labor Law (formerly Civ. Prac. Act, § 882-a). Those sections, in substantially identical language, grant the right of jury trial in a proceeding to punish, as a criminal contempt, a failure or refusal to obey an injunction order granted “ in any case involving or growing out of a labor dispute ’ ’. It is urged by the defendants that the legislative design to apply those sections to strikes by public employees (§ 210, subd. 1) is demonstrated by the fact that, whereas the Legislature expressly provided that section 807 of the Labor Law[1] is inapplicable to injunctions to restrain violations of section 210 (subd. 1), no similar exclusionary language applies to section 808. We find no substance to this argument.
Our discussion of the statutory question may well begin by noting that a primary command to the judiciary in the interpretation of statutes is to ascertain and effectuate the purpose of the Legislature. In finding such purpose, one should look to the entire statute, its legislative history and the statutes of which it is made a part. (See, e.g., Matter of Hogan v. Culkin, 18 N Y 2d 330, 335; Levine v. Bornstein, 4 N Y 2d 241, 244; see, also, McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 92, 95, 96, 97, 98, 111.)
*115 Section 807 and section 808 of the Labor Law (as well as Judiciary Law, § 753-a) are but the identically worded successors of a statutory provision enacted in the 1930s which constituted this State’s Little Norris-LaGuardia Act (Civ. Prac. Act, § 876-a), named for its Federal prototype, the Norris-LaGuardia Act (47 U. S. Stat. 70; U. S. Code, tit. 29, §§ 101-115). Accordingly, in determining the reach of the new statutes, we find it highly significant that for the past three decades their predecessors have been held inapplicable to public employees. More specifically, the courts have ruled that such provisions—both those restricting or limiting the issuance of labor injunctions and those granting the right of trial by jury in criminal contempt proceedings involving labor disputes — apply solely to employees in private industry and not to those in public employment. (See United States v. Mine Workers, 330 U. S. 258, 298; Jewish Hosp. of Brooklyn v. “John Doe”, 252 App. Div. 581, 585; see, also, New York City Tr. Auth. v. Loos, 2 Misc 2d 733, 742, affd. 3 A D 2d 740; New York City Tr. Auth. v. Loos, 9 Misc 2d 492, 493.) It is overly simplistic reasoning to assume that the Legislature, in excluding the provisions of section 807 from the application of the Taylor Law, but failing similarly to mention section 808, intended to grant the right of trial by jury to public employees, a right which they had never previously possessed under the latter section.
If it had been the design of the Legislature to grant such a right, that body would undoubtedly have done so expressly and unequivocally. There is nothing in the provisions under consideration relating to jury trials (Labor Law, §§ 807, 808; Judiciary Law, § 753-a) which discloses any concern with, or application to, public employment. In point of fact, when we look to the legislative history which preceded and accompanied the enactment of the Taylor Law, there is no suggestion that any one, in or out of the Legislature, proposed trial by jury in contempt proceedings for its violation. It is inconceivable, we suggest, that so vital and salient a feature would not have been enacted, let alone not mentioned, by the Legislature if there had been any design or desire to provide therefor. To accept the position of our dissenting brothers would ascribe to the Legislature an intention not only to *116 override decisions on the books for upwards of 30 years, which denied the right to trial by jury to public employees (see supra, p. 115), but also to nullify the “ old and well-known rule that statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect.” (United States v. Mine Workers, 330 U. S. 258, 272, supra.)
The conclusion, therefore, is clear. The Taylor Law was never intended to, and does not, make provision for jury trials in contempt enforcement proceedings; the reference in the Taylor Law to section 807 cannot possibly create a right to a jury trial under section 808.
Nor do we find any basis for a claim that a denial of a jury trial in this case offends against any constitutional provision.
Contrary to the defendants’ contention, to refuse a trial by jury to public employees or their representative organizations and to grant it to those in private industry does not violate the equal protection of the laws under the Constitution of either the United States or New York State. Ever since the enactment of the Norris-LaGuardia Act and our State’s Little Norris-LaGuardia Act, the view has been uniformly and consistently held that a legitimate distinction between public and private employment is constitutionally permissible. This has been recognized, we note, with regard not only to the prohibition against strikes but also to the issue, now confronting us, affecting jury trials. (See United States v. Mine Workers, 330 U. S. 258, 298, supra; Jewish Hosp. of Brooklyn v. “John Doe”, 252 App. Div. 581, 585, supra; see, also, New York City Tr. Auth. v. Loos, 2 Misc 2d 733, 742, affd. 3 A D 2d 740, supra; New York City Tr. Auth. v. Loos, 9 Misc 2d 492, 493, supra.) Indeed, the Supreme Court, explicitly dealing with the problem in the Mine Workers case—where the miners were governmental employees—declared (330 U. S., at p. 298):
“ Not only were the defendants fully informed that a criminal contempt was charged, but we think they enjoyed during the trial itself all the enhanced protections accorded defendants in criminal contempt proceedings. We need not treat these at length, for defendants, in this respect, urge only their right to a jury trial as provided in § 11 of the *117 N"orris-LaGuardia Act. But § 11 is not operative here, for it applies only to cases ' arising under this Act,’ and we have already held that the restriction upon injunctions imposed by the Act do not govern this case. The defendants, we think, were properly tried by the court without a jury.”
There is at least one vital reason why a jury trial is not appropriate or desirable in applying sanctions for violation of statutes regulating labor relations with public employees or their representative organizations. Prompt determinations, unencumbered by the long, drawn-out procedures involved in jury trials, are needed in criminal contempt proceedings under the Taylor Law in order to deter the continuance of paralyzing public strikes by visiting speedy punishment on the offenders.[2] It is not unreasonable to assume that the Legislature, which prohibited strikes by public employees, would provide every reasonable means for enforcement of that prohibition by giv *118 ing the courts the powers necessary to bring about their early termination. Such strikes, if caused by firemen, could “overnight permit the destruction of a whole city”, or if by policemen could “ endanger the safety of millions of people and of all their possessions ”, or if called by sanitation workers could “ almost overnight produce an epidemic threatening the lives of other millions of people.” (Memorandum of Governor Dewey, approving Condon-Wadlin Act [L. 1947, eh. 391], N. Y. Legis. Ann., 1947, pp. 36-37.) And, we would add, if called by teachers in the New York City public school system, such strikes would not only deprive children of their fundamental and statutory right to a basic education—thereby severely handicapping them in their efforts to attain higher education and future employment—but it would also impair their respect for law.
Strikes by employees in certain private industries may, as Judge Eeatiítg notes in dissent (opn., p. 134), be just as paralyzing in their impact upon the public as strikes by workers in public employment. But the Legislature has not seen fit to legislate with Regard to such strikes.[3] And, just as a classification is not deemed unreasonable which differentiates between strikes by public employees and employees in private industry,[4] *119 so a classification may not be subjected to attack which, denies a jury trial to public employees whose willful defiance of the prohibition against strikes, if not brought to an immediate end (without the delay occasioned by possibly long, drawn-out jury trials), might cripple a city. As the Supreme Court not too long ago had occasion to observe (McGowan v. Maryland, 366 U. S. 420, 425-426):
‘ ‘ Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than other's. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State’s objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.” (Emphasis supplied.)
Certainly, a reasonable distinction may be drawn between public and private employment; reasonableness of a classification under constitutional standards is always influenced by time and circumstances. It is sufficient to note that, as of the present, legislative differentiation between public and private employees, insofar as restrictions on their right to strike and to jury trials are concerned, is reasonable.
The defendants’ further contention that the Federal Constitution (art. Ill, § 2; 5th, 6th, 14th Arndts.) requires that they be accorded a trial by jury is likewise without merit. Bloom v. Illinois (391 U. S. 194), contrary to the defendants’ argument, does not stand for the proposition that the Fourteenth Amendment guarantees the right to a jury trial in every contempt proceeding in State courts. The decision in Bloom is plainly limited in its application to “ serious ” crimes in contradistinction to “petty” offenses (e.g., p. 197; see, also, Dyke v. Taylor Implement Co., 391 U. S. 216, 220; DeStefano v. Woods, 392 U. S. 631, 633). In the Dyke case (391 U. S. 216, supra), for instance, the Supreme Court, after observing that it had not drawn a precise line ' ‘ between punishments that can be *120 considered ‘ petty ’ and those that cannot be ”, went on to say that “it is clear ’ ’ — from its decision in Cheff v. Schnackenberg (384 U. S. 373) — “that a six-month sentence is short enough to be ‘ petty.’ ” In the case before us, it is sufficient to point out that the maximum punishment to which the individual defendants are subject — if found guilty— is 30 days in jail and a fine of $250 (Judiciary Law, § 751, subd. 1).
Nor does the penalty to which defendant unions are subject — a fine of $10,000 a day or one fifty second (1/52) of the total amount of annual membership dues, “ whichever is the lesser ” (Judiciary Law, § 751, subd. 2, par. [a])[5] — render the contempt a “ serious ” crime. The determination, whether it is serious or petty under the decisions, turns not on the amount of the fine which may be imposed but solely on the length of the prison sentence. (See Ex parte Wilson, 114 U. S. 417, 428; People v. Bellinger, 269 N. Y. 265, 271; Matter of McKinney v. Hamilton, 282 N. Y. 393, 397.) Consequently, as the cases reveal, the fine, even though sizeable in amount,[6] furnishes no valid criterion for the defendants’ claim that the contempt charged against them constitutes a serious crime. Further, even if the amount of the permissible fine had any relevance, the fine—which in the last analysis must be borne by the union membership (see, e.g., Martin v. Curran, 303 N. Y. 276, 281)—is actually small, amounting, at most, to no more than a member’s weekly union dues for each day of the contempt.
In sum, then, we find that no constitutional or statutory right of the defendants will be transgressed by a trial of the criminal contempt charge without a jury. *121 = The orders appealed from should he affirmed, without costs, and the questions certified answered in the negative.

. This section restricts or limits the issuance of injunctions in “labor dispute” cases. Section 807 (formerly Civ. Prac. Act, § 876-a) and section 808 (formerly Civ. Prac. Act, § 882-a) are counterparts of the Norris-LaG-uardia Act (47 U. S. Stat. 70; U. S. Code, tit. 29, §§ 101-115; also U. S. Code, tit. 18, § 3692).

. Under the Judiciary Law (§ 751, subd. 2, par. [d], cl. [i]), a labor organization appealing an adjudication and fine for criminal contempt is not required to pay the fine until the appeal has been finally determined. Based on that provision, it is urged in the dissenting opinion of Judge Keating (p. 133) that the Legislature sanctions delay in carrying out the punishment imposed on unions in such contempt proceedings and, hence — to quote from the dissent — “the purported justification [mentioned in the court’s opinion] for denying a jury trial has no application at all.” However, what the dissent overlooks is the further provision of the Judiciary Law (§ 751, subd. 2, par. [d], cl. [ii]) which, in order to reduce to a minimum delays due to appeals, requires the appellate courts to “ grant a preference in the hearing thereof.” No similar grace period pending appeal is granted to union leaders for commencement of imprisonment for contempt, and in at least one of New York City’s recent major strikes in the public sector the leader was imprisoned during the continuation of the strike. That the Legislature intended the courts to utilize the criminal contempt proceedings as a means of promptly putting an end to illegal strikes by public employees is likewise apparent from the following statement contained in the Final Report (March 31, 1966) of the Governor’s Committee on Public Employee Relations which led to the enactment of the Taylor Law (p. 43): “ To this end [namely, the termination of illegal strikes in violation of section 210 of the Civil Service Law] we recommend that it may be made obligatory by law for specified law officers to initiate court action for injunctive relief before any strike breaks out as soon as it can be proven that it is about to occur, and if the resulting order or decree of the court is violated to institute a criminal contempt proceeding promptly.” (Emphasis supplied.)

. Our Legislature, distinguishing between “ private ” and “ public ” employees, has refrained from enacting laws prohibiting strikes—which might have a crippling effect on a city—by employees of private utilities, privately owned railroads, shipping lines and other similar private industries. The Legislature’s failure to act in the private sector is undoubtedly due to the fact that such provisions might conflict with Federal legislation, such as the National Labor Relations Act (U. S. Code, tit. 29, § 151 et seq.) and the Railway Labor Act (U. S. Code, tit. 45, § 151 et seq.) and might thereby violate the exclusive primary jurisdiction of Federal administrative agencies vested with the authority to deal with such matters. (See, e.g., San Diego Unions v. Garman, 359 U. S. 236.)

. The policy reasons for distinguishing between public and private employees are succinctly set forth in the afore-mentioned Final Report of the Governor’s Committee on Public Employee Relations (pp. 18-19): “ Careful thought about the matter [that is, the distinction between strikes by public and private employees] shows conclusively, we believe, that while the right to strike normally performs a useful function in the private enterprise sector (where relative economic power is the final determinant in the making of private agreements), it is not compatible with the orderly functioning of our democratic form of representative government (in which relative polical power is the final determinant).”

. It is also asserted that, in dealing with the question whether a serious crime is here involved, this court should consider that the labor organizations may be compelled to forfeit their membership dues deduction privileges for a period not to exceed 18 months (Civil Service Law, § 210, subd. 3 par. [f]). Since no action has been taken by any governmental official, as required by section 210 of the Civil Service Law, and none can result from the present contempt proceedings, the fact that such forfeiture may occur at some future date has no relevance to the question now before us.

. It should be noted, in passing, that, although a fine of $700,000 was imposed on defendant labor organization in United States v. Mine Workers (330 U. S. 258, supra), the Supreme Court held that the defendant had no right of trial by jury. And in Cheff v. Schnackenberg (384 U. S. 373, supra), a demand for a jury trial was held properly denied in a criminal contempt case even though one of the defendants had been fined $100,000.