Burke, J. (dissenting).
The order seeking to place these defendants in contempt is predicated on the Public Employees ’ Fair Employment Act, more popularly known as the Taylor Act (Civil Service Law, §§ 200-212), and article 19 of the Judiciary Law (Judiciary Law, §§ 750-781). Section 210 of the Taylor Act specifically provides that a public employee who condones, causes or instigates a strike “ shall be subject to the disciplinary' penalties provided by law for misconduct, in accordance with procedures established by law.” (Civil Service Law, § 210; emphasis added.) Such procedures are contained in the Judiciary Law and Labor Law. The defendants have demanded a trial by jury in this matter, contending that such a trial is available to them as a matter of right by virtue of various statutory provisions (Judiciary Law, § 753-a; Labor Law, § 808), and that a denial of a trial by jury would be unconstitutional. For the reasons stated below, I am of the opinion that a trial by jury is mandated in this instance.
In support of their contention that they have a statutory right to a trial by jury, defendants rely in part upon section 753-a of the Judiciary Law. It is there stated, in clear and unequivocal terms, that: “ Notwithstanding any inconsistent provision of law, where the alleged contempt is punishable under section seven hundred fifty and/or section seven hundred fifty-three and arises out of a failure or refusal to obey any mandate of a court contained in or incidental to an injunction order granted by such court in any case involving or growing out of a labor dispute, no punishment, prescribed by either of such sections, shall be meted out except after a trial by jury to which the defendant shall be entitled as a matter of right ”. Whether that provision is here/applicable depends on three factors: first, is the contempt here punishable under either of the above-mentioned sections; second, did this injunction involve or grow out of a labor dispute; finally, is the punishment sought prescribed by either section. Since the order seeking to place these defendants in criminal contempt is predicated on section 750 of the Judiciary Law, it is axiomatic that the first and third requirements of section 753-a are indeed satisfied in this case. The sole basis for denying a jury trial under this section is to *122 conclude that the injunction involved did not arise from a labor dispute.[1] The court below has relied upon decisions from lower courts in this State which, while construing other statutes in a different era, have held that there can be no labor dispute within the meaning of particular statutes where public employees are involved. Since it is not disputed that, absent such an interpretation of section 753-a, the court would determine that a labor dispute did in fact exist in this situation, I merely conclude that under section 753-a of the Judiciary Law defendants are given an unqualified right to a trial by jury in this instance, notwithstanding any inconsistent provisions of law.
A parallelism is drawn between section 753-a of the Judiciary Law and sections 807 and 808 of the Labor Law in an effort to sustain the contention of the Corporation Counsel that a “ labor dispute ” cannot exist under the Judiciary Law, when public employees are involved. Sections 807 and 808 of the Labor Law comprise an article in themselves entitled “ Injunctions in Labor Disputes ”. Of these two sections, only 807 has been held not to apply to public employees; the one case purporting to reach that same conclusion under section 808 does so merely by dictum, has never been followed, and was not the source of any significant commentary. (New York City Tr. Auth. v. Loos, 9 Misc 2d 492.)
Section 807 provides in effect that no injunction or restraining order involved in or growing out of a labor dispute shall be issued until a hearing has been held. This section’s predecessor, like the predecessor of section 753-a of the Judiciary Law, was enacted in 1935. Shortly thereafter, the New York Labor Relations Act was enacted. (Labor Law, §§ 700-716.) In that act, the Legislature specifically declared that its provisions were not to apply to either public employees or employees of nonprofitmaking hospitals (Labor Law, § 715). The very year *123 that act was enacted, the Appellate Division had before it the case of Jewish Hosp. of Brooklyn v. “ John Doe ” (252 App. Div. 581), wherein the sole question was whether the predecessor of section 807 applied to a charitable corporation such as the Jewish Hospital. The court in holding 807 inapplicable began by summarizing the various maxims of construction pertaining to the State and its political subdivisions to show that section 807 might not apply as these entities were not specifically included, despite the statute’s encompassing terms. The court proceeded by demonstrating how the legislative purpose behind granting a hearing prior to the issuance of a restraining order had no relation to charitable corporations and their employees. Finally, the court relied upon the provisions in the Labor Relations Act. ‘ ‘ Both statutes should be read together and reconciled as far as possible in an effort to read the mind of the Legislature. [Citations omitted.] In enacting both statutes the Legislature recognized labor’s right to strike and to resort to peaceful picketing and other lawful activities free from interference by the courts * * * The Labor Relations Act — unlike the instant statute — expressly provides it shall not apply ‘ to employees of the State * * * or to employees of charitable, educational or religious associations or corporations ’ ” (252 App. Div. 581, 586). This same rationale produced a similar decision in New York City Tr. Auth. v. Loos (2 Misc 2d 733): “ The procedural requirements of section 876-a of the Civil Practice Act [now Labor Law, § 807] have no application to these public employees. Also, the individual defendants plainly have no rights under the State Labor Relations Law for section 715 of the Labor Law specifically provides that such act shall not apply to public employees generally [citations omitted] ” (p. 742). Finally, in a recent decision involving the biennial confrontation with the Transport Workers Union, it was stated: “ It has been settled that ‘ public employees ’ can and should be enjoined from striking and that the provisions of section 807 are not applicable to such employees. ” (Manhattan & Bronx Surface Tr. Operating Auth. v. Quill, 48 Misc 2d 1021, 1022.)
Each of these decisions is inapplicable to the present litigation. Each decision recognizes that, where employees are prohibited from striking, it is indeed improvident to require a time- *124 consuming hearing before a restraining order may be issued against the acknowledged illegal strike. Thus, it is no mere accident that the Legislature, in enacting the Taylor Act, devoted a separate section to the application for injunctive relief. (Civil Service Law, § 211.) This new section not only reflects the holdings of the cases mentioned above but is also compatible with the general purpose of the act—“to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government.” (Civil Service Law, § 200.) It does not follow, the cases do not so hold, and the Taylor Act does not so provide, that the public interest is also served by denying public employees the right to a trial by jury. Moreover, before the Taylor Act was adopted, the Legislature, in 1963, made several amendments to the State Labor Relations Law, with the explicit intention of conferring rights upon the employees in nonprofitmaking hospitals. (See, e.g., Labor Law, §§ 715-716.) Thus, the underlying reason for the rule in both Jewish Hospital and Loos (supra) has been overturned by the Legislature, and the decisions have been effectively overruled. It is, therefore, error to declare, as the court below has done, that since the Legislature ' ‘ must have been aware of the prior judicial interpretation of those sections as not embracing disputes involving public employees, the Legislature may be taken to have acquiesced in that interpretation. ’,[2]
Section 808 of the Labor Law is admittedly similar in language to section 753-a of the Judiciary Law. This marked uniformity between the statutes, when coupled with the decision in New York City Tr. Auth. v. Loos (9 Misc 2d 492, supra), is said to provide a precedent for the denial of the trial by jury in this case. In Loos, the court stated that neither section 808 nor *125 section 753-a confers a right to a trial by jury where the “ labor dispute ” is between public employees and their government. However, in that case, the court concluded that there was no evidence on which the defendant could be adjudged guilty of contempt. Hence, the, question of whether a jury trial was required, while discussed by that court, was not instrumental in the court’s decision. Moreover, the sole basis for suggesting that there is no statutory basis for a jury trial for a contempt by public employees was the previous decision in Loos, which dealt with the necessity of a hearing prior to the issuance of a restraining order (2 Misc 2d 733, supra). As the Legislature in 1963 conferred rights upon certain public employees, thereby negating the holding in the first Loos decision, it follows that any extension of the Loos rationale was also negated. This is confirmed by an analysis of specific provisions of the Taylor Act.
The act begins by reciting that “ The Legislature of the state of New York declares that it is the public policy of the state and the purpose of this act to promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government. These policies are best effectuated by (a) granting to public employees the right of organization and representation, (b) requiring the state, local governments and other political subdivisions to negotiate with, and enter into written agreements with employee organizations representing public employees (Civil Service Law, § 200.) Following a section devoted to the definition of the terms of the act, there are two sections conferring upon the public employee the right to organize and the right to be represented for purposes of collective bargaining “ with their public employers”. (Civil Service Law, §§ 202, 203.) It is thus abundantly clear that the purpose of the Taylor Act was to enlarge the rights of public employees and to acknowledge the existence of an employer-employee relationship in the area of public employment. It is readily apparent that this new approach to the status of a public employee is totally inapposite to the philosophy prevailing at the time of the Loos and Jewish Hospital of Brooklyn decisions. It is undisputed that the Taylor Act acknowledges the applicability of the *126 Judiciary Law when injunctions are to be enforced. “If an order of the court enjoining or restraining such violation does not receive compliance, such chief legal officer shall forthwith apply to the supreme court to punish such violation under section seven hundred fifty of the judiciary law.” (Civil Service Law, § 211.)[3] It is apparent that this reference to the Judiciary Law was directed to all of article 19. It is also apparent, from all of the above, that the injunction in this case is one ' ‘ involving or growing out of a labor dispute ” within the meaning of section 753-a of the Judiciary Law. The alternative conclusion, adopted today, implies that the Legislature in enacting the Public Employees’ Fair Employment Act intended section 753-a of the Judiciary Law to apply to that act, except where public employees are involved.
The Taylor Law, through its reference to the Judiciary Law, clearly intended that public employees and their representatives should have the right to a trial by jury in the present situation. Just as the amendments to the Labor Relations Law evidence an intent to increase the rights of employees in charitable hospitals, the purpose of the Taylor Act, as expressed therein, demonstrates an enlightened approach toward employer-employee relations in this area. Here, as in Jewish Hosp. of Brooklyn v. “John Doe” (252 App. Div. 581, 586, supra), “ Both statutes should be read together and reconciled as far as possible in an effort to read the mind of the Legislature.”
The majority proffers many reasons why a jury trial may not be appropriate or desirable in this case. Thus, referring in part to the legislative history of an act since repealed, we are told that a jury trial might precipitate ‘' the destruction of a whole city ”, “ endanger the safety of millions ”, and “ produce an epidemic ”. I do not comprehend how the mere presence of a jury in a criminal contempt case can cause such disaster. However, the reasons advanced by the majority do serve to *127 bring to mind the knowledgeable words of Mr. Justice Holmes : “ G-reat cases like hard cases make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment.” (Northern Securities Co. v. United States, 193 U. S. 197, 400.)
Were this case to involve simply a question of statutory construction, it would be unnecessary to go beyond the analysis of the statutory provisions already discussed, since that analysis fairly compels the conclusion that those statutes provide for a jury trial of a criminal contempt alleged to have been committed by public employee unions and their officers. But, an additional issue is raised by the contrary construction of those statutes. The issue is of a constitutional dimension since it involves a purported statutory discrimination between public and private employees in relation to their respective rights to such a jury trial. Initially, it should be emphasized that public employees, qua public employees, are not to be regarded as inhabitants of a constitutional limbo in which they are relegated to a ' ‘ watered-down version of constitutional rights.” (Garrity v. New Jersey, 385 U. S. 493, 500; Keyishian v. Board of Regents, 385 U. S. 589.) Furthermore, this proposition remains true even in the face of the dire perils of strikes by public employees. A teacher no more forfeits his constitutional rights when it is alleged that he is engaged in an illegal strike than does any individual citizen forfeit them when it is alleged that he has committed some heinous crime. We harbor no doubts as to the very serious character of the threat to the public inherent in strikes by public employees. It is precisely in times when the public interest is so seriously threatened that courts must heed the caution voiced by Chief Judge Cardozo : “ Historic liberties and privileges are not to bend from day to day ‘ because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment ’ * * * are not to change their form and content in response to the ‘ hydraulic pressure ’ * * * exerted by great causes.” (Matter of Doyle, 257 N. Y. 244, 268, quoting Holmes, J., in Northern Securities Co. v. United States, 193 U. S. 197, 400-401.) Suffice it to say that the issue here is whether the *128 defendants have a statutory right to a jury trial and the major consideration in arriving at a negative conclusion on that issue is the constitutional infirmity of such a conclusion and the emphasis on the perils of public employee strikes merely serves to becloud the true issue to be resolved here.
Both the United States (14th Arndt.) and the New York State Constitutions (art. I, § 11) provide that no person shall be deprived of the equal protection of the law. Cases too numerous for citation have applied this constitutional mandate in a wide variety of situations and the United States Supreme Court has succinctly stated the applicable criteria: ‘ ‘ Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State’s objective * * * A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.” (McGowan v. Maryland, 366 U. S. 420, 425-426; emphasis added.) The emphasized portion of that opinion succinctly states the constitutional infirmity flowing from the majority’s construction of the statutes so as to deny defendants a right to trial by jury. Although it is true, as the majority states (p. 116), “ that a legitimate distinction between public and private employment is constitutionally permissible ”, it must be borne in mind that a classification which is constitutionally impeccable for one purpose may be constitutionally infirm for another (Gulf, Colorado & Santa Fe Ry. v. Ellis, 165 U. S. 150). Thus, a classification of unions and their members in terms of their employment in the public, as against the private, sector may well be reasonably related to a legislative objective of prohibiting strikes which interfere with essential public services. We are here faced, however, not with legislation barring strikes by public employees, but with legislation which, as construed, denies a jury trial in a criminal contempt proceeding against public employees arising from the alleged violation of a court order issued in a labor dispute with a governmental employer, but which grants such a jury trial to employees in the private sector who are also charged with violating a court order. Each is charged with the same violation and the fact *129 that one is employed by the Board of Education, while the other is employed by some private educational system or institution, has no bearing whatever on the procedural method by which his accountability for the alleged violation is to be determined. Is there any governmental interest which requires that the Board of Education employee have his guilt or innocence determined by a Judge without a jury, whereas the employee of the private educational system or institution may have his guilt or innocence determined by a jury? No such interest has been demonstrated in this case and characterizations of the jury-trial process as “long” and “drawn-out” cannot serve to supply such an interest.[4] Furthermore, in terms of the time and circumstances within which it is insisted this legislation must be viewed, it is clear that this is a time when the right to a jury trial is increasingly being recognized as being ‘ ‘ fundamental to the American scheme of justice ” (Duncan v. Louisiana, 391 U. S. 145, 149). In view of this, is it reasonable to ascribe to the Legislature an intent to sacrifice such a fundamental aspect of our system of justice to the demands of expedience ? So, too, the circumstances of the recent history of public employer-employee labor relations would seem to indicate that the legislators, as practical, realistic men, realized that the very resort to the court and its process in such situations often tends to exacerbate and inflame an already critical situation and has even, in the recent past, itself become a key obstacle to the resolution of such disputes and the re-establishment óf the sought-after harmony and co-operation between public employers and their employees. In the face of these facts, is it reasonable to say that the Legislature could reasonably have concluded that the withholding of a right so universally recognized as an integral part of our system of administering justice would hasten the end of such public employee labor disputes? The time and the circumstances provide a rather clear-cut answer to that question. The conclusion is inescapable that, in the language of McGowan (supra), the distinction between public and private employees, in the context of the right to jury trial, is “ wholly irrelevant ” to the *130 achievement of the legislative objectives expressed in the Taylor Act. (Cf. the equal protection analysis in Baxstrom v. Herold, 383 U. S. 107,111-112.) Indeed, the legislative objectives sought to be achieved by the enactment of the Taylor Act are not difficult to establish since the Legislature saw fit to verbalize its objectives in the statute itself:The legislature of the state of New York declares that it is the public policy of the state and the purpose of this act to promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of the government.” (Civil Service Law, § 200; emphasis added.) It is difficult, if not impossible, to conceive of any way in which the denial of a jury trial, in a criminal contempt proceeding brought against a public employees’ union and its officers and arising from a dispute with a governmental employer, is in any way relevant to or productive of harmony and co-operation or how it could possibly be relevant to the assurance of the orderly and uninterrupted operations and functions of the government. The issue involved goes merely to the procedure to be invoked when a labor dispute has already occurred and has resulted in a court order which has allegedly been violated and simply has no ■bearing whatever on the effectuation or frustration of the expressed legislative objectives. This is particularly apparent when it is recognized that the matter of jury trial arises only after events have occurred which necessitate a resort to the court and its mandates in an effort to enforce compliance which has allegedly not been voluntarily forthcoming. Nor is it conceivable that the denial of such a right, especially when it is granted in criminal contempt proceedings arising from private labor disputes, could effectuate the objectives of harmony and co-operation and uninterrupted government operations in the future. Governmental entities can show no vital or even non-vital interest which will be served by denying these defendants a jury trial. In the face of the obvious lack of relevant connection between the public-private employee distinction as to the right to a jury trial and the objectives sought to be achieved by the legislation of which the denial of a right to jury trial is purportedly a part, there is a rather clear-cut deprivation of the equal protection of the law tp which both public and private *131 employees are entitled. It should need no citation of case or treatise to establish the proposition that a particular enactment, at the time it is challenged, either meets or does not meet the requirements of the fundamental document under which it must find its ultimate validity. Either the statutes involved in this case, as construed, accord public employees the equal protection of the law or they deprive public employees of such equal protection.
In light of the serious constitutional deprivation of equal protection involved in the majority’s construction of these statutes, it is difficult to understand why some rather fundamental canons of statutory construction were apparently ignored in arriving at that construction. While we recognize that the “ primary command to the judiciary in the interpretation of statutes is to ascertain and effectuate the purpose of the Legislature ”, we also recognize that “A construction of a statute is favored which makes it operate equally on all classes of persons and avoids unjust discrimination.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 147; Matter of Meyer, 209 N. Y. 386.) The mere comparison of the respective rights of the public and private employee resulting from the majority’s construction amply demonstrates that this canon played no part in that construction. Even more critically in point is the canon which asserts that “ statutes must be construed to avoid not only the conclusion that they are unconstitutional, but also to avoid any grave doubts upon that score.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150; Courtesy Sandwich Shop v. Port of N. Y. Auth., 12 N Y 2d 379, 389; Matter of Coates, 9 N Y 2d 242, 253; Matter of Vanderbilt, 281 N. Y. 297, 313.) Even assuming, arguendo, that the majority’s construction of the statutes so as to deny the public employee the right to a jury trial of a criminal contempt is supportable simply as a matter of construction, the resulting constitutional infirmity of that construction requires that the court implement these canons to obviate those infirmities. It is axiomatic that the Judiciary should take great care in ascribing a particular intent to the Legislature in enacting a particular statute. It is equally axiomatic that such care should be redoubled when the intent sought to be ascribed to the Legislature carries with it a burden of unconstitutionality. The lack of such care is *132 acutely apparent here since there is available to the court a construction which is eminently reasonable, if not compelled, as well as free from constitutional objections.
Since we find that the defendants are entitled to a jury trial under the statutes of this State and since a contrary construction of those statutes raises a grave constitutional question as to the deprivation of the equal protection of the law, we would reverse the orders of the Appellate Division which affirmed the denial of appellants’ fight to a jury trial.
Accordingly, the orders of the Appellate Division should be reversed and the certified questions should be answered in the affirmative.

. Labor dispute, within the meaning of section 753-a, is defined in that section in the following manner: “ The term ‘ labor dispute-’ includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee.”

. United States v. Mine Workers (330 U. S. 258), relied upon by the majority in this case involving the Taylor Act, dealt only with the NorrisLaGuardia Act and had no direct bearing on any of the decisions of the New York courts discussed above. As I will indicate later, the Supreme Court’s decision was limited in its scope, and clearly failed to consider the question of equal protection of the law. Moreover, the defendants in that case waived the right to an advisory jury (supra, p. 268). It is also significant that the one short passage set forth in the majority opinion includes the entire discussion of trial by jury albeit the opinions therein exceeded 120 pages.

. While section 211 merely refers to section 750 of the Judiciary Law, the Corporation Counsel concedes that subsequent sections were also intended to apply. As the majority quite properly indicates, the order in this case is sought under sections 750 and 751 of the Judiciary Law. It would indeed be overly simplistic reasoning on our part if we were to hold that reference to section 750 meant sections 750 and 751 only, but not sections 750, 751 and 753-a.

. Indeed, at least as to the fine which may be imposed, the Legislature disclaimed any overwhelming desire for swift punishment by providing that it need not be paid until an “appeal is finally determined.” (Judiciary Law, § 751, suhd. 2, par. [d], cl. [i].)